**FREMONT CAKE & MEAL CO. v. WILSON & CO., Inc.**

Civ. No. 69–49.

United States District Court
D. Nebraska, Omaha Division.

Oct. 8, 1949.

Maxwell V. Beghtol and J. Lee Rankin (Beghtol & Rankin), of Lincoln, Neb., for the plaintiff.

Yale C. Holland (Kennedy, Holland, De-Lacy & Svoboda), of Omaha, Neb., for the defendant.

DELEHANT, District Judge.

In 1947 Wilson & Company brought an action against the Fremont Cake & Meal Company in this court to recover damages for the alleged breach of contract for the sale and delivery of soybean oil to Wilson & Company, the obligations of the vendor under which had devolved upon Fremont Company. On March 23, 1948, upon the motion of Fremont Company for a stay of proceedings in that action pending arbitration, under Title 9 U.S.C.A. § 3, the court filed a memorandum opinion, announcing its ruling sustaining the motion and granting the stay and directing the preparation and submission for signature of an order accordingly. Wilson & Co. v. Fremont Cake & Meal Co., D.C.Neb., 77 F.Supp. 364. The formal order thus directed was never submitted or signed. Wilson & Company having voluntarily dismissed that action after the filing of the memorandum opinion, but before the service or filing by Fremont Company of an answer, and having thereafter instituted a suit upon its claim in the District Court of Dodge County, Nebraska, Fremont Company on November 13, 1948, served and filed in the suit theretofore pending in this court a motion asking for the vacation of the dismissal, and the reinstatement, of that action. This court, by order entered March 26, 1949, denied the motion; and, by a supplemental order entered April 1, 1949, denied a further motion in that case. A memorandum explanatory of each of those rulings, was filed; and those two memoranda were published under a single caption. Wilson & Co. v. Fremont Cake & Meal Co., D.C.Neb., 83 F.Supp. 900. Considered together, those two published and cited opinions reflect the history of the business transactions and resulting litigation between the parties up to April 7, 1949, with the exception of the narration of the pleadings and proceedings in the Dodge County, Nebraska, suit. That his-

tory will not be repeated on this occasion. The earlier case in this court is ended.

With the suit of Wilson & Company in the District Court of Dodge County, Nebraska, pending and undetermined as an ordinary action for the recovery of a judgment for money only, Fremont Company on April 8, 1949, instituted this action against Wilson & Company by the filing of a complaint whose prayer is "that the court enter an order directing that arbitration proceed between the parties herein in the manner provided for in the contract, Exhibit "A" and under the Rules of the National Soybean Processors' Association, as provided for in the Act of February 12, 1925, in U.S.C.A., Title 9, section 4, and for such other and different relief as may be just and equitable in the premises."

Wilson & Company first moved to dismiss this action. But, on July 13, 1949, by order filed July 14, 1949, this court denied the motion, and in its memorandum announcing the ruling placed it on two grounds, first, the probable unavailability of such a motion as an allowable pleading under the summary procedure erected by Title 9 U.S.C.A. § 4; and, secondly, the narrowness of the area within which motions to dismiss may be granted in actions pending in this court, with special reference to the posture at that time of this case. Fremont Cake & Meal Co. v. Wilson & Co., D.C.Neb., 9 F.R.D. 243.

Wilson & Company then answered, and, later, on September 2, 1949, served and filed an amended answer. In the latter pleading it admits the diversity of citizenship between the parties and the existence of a controversy involving more than $3,000; generally admits the factual history of the transaction between the parties set out in the cited opinions of this court in the earlier case; alleges the pendency and the history up to the date of service of the amended answer and the imminence of trial upon the merits of the Dodge County, Nebraska, case; and denies the jurisdiction of this court over the present action, and that it is obliged under its contract to submit to or participate in arbitration, and that the contract contains any valid and binding agreement to arbitrate. And, jus-

tifying its course by the denial of a binding agreement for arbitration, it admits that it has refused and refuses to proceed to arbitration, an admission which the court must consider not in isolation but in the setting in which it was made (vide infra.)

Supplementary pleadings serve to disclose the developments in the Dodge County, Nebraska, action up to the date of this opinion. The pleadings in their entirety are voluminous and need not be more exhaustively set out for the purposes of this ruling.

Trial of this action upon its merits was had to the court without a jury on September 16, 1949. The case was submitted on the pleadings, a stipulation of nearly all of the material facts, and the oral testimony of two witnesses, one for each of the parties. Briefs were ordered to be, and have been, prepared very promptly. They have been given careful consideration.

The court now adheres to the factual findings incorporated into the two published memoranda filed in the earlier case pending in this court, all of which may be considered as made again for the purpose of this ruling, without useless repetition. Certain supplemental findings will now be announced, including details, considered to be significant in the present action, which were either not mentioned or only inadequately suggested in the former opinions, and also matters of fact and omission and judicial proceedings which have occurred since April 1, 1949.

The Commercial Arbitration Rules of the American Arbitration Association, in their Article III, section 7, dealing with "Initiation of Arbitration," contain the following language:

"Any party to a contract containing a clause providing for arbitration by the American Arbitration Association or under its Rules, or any party to a contract containing a general arbitration clause, when the parties have agreed, by stipulation or otherwise, to arbitrate under the Rules of the American Arbitration Association, may commence an arbitration in the following manner:

"(a) By such party giving written notice to the other party of intention to arbitrate

(Demand), which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought; and

"(b) By filing with the Administrator at any of its offices two copies of said notice, together with two copies of the contract or such parts thereof as relate to the dispute, including the arbitration provisions.

"The party upon whom the demand for arbitration is made may, if he so desires, file an answering statement with the Administrator within seven days after mailing of such demand, in which event he shall also send a copy of his answer to the other party. If no answer is filed within the stated time, it will be assumed that the claim made is denied. Failure to file an answer shall not delay the arbitration.

"After the filing of the claim, and answer if any, if either party desires to make any new or different claim, such claim shall be made in writing and filed with the Tribunal Clerk and a copy thereof mailed to the other party, who shall have a period of seven days from the date of such mailing within which to file an answer with the Tribunal Clerk.

"However, after the Arbitrator is appointed, no new or different claim may be submitted to him except with the consent of the Arbitrator and all other parties."

And Article III, section 9, contains the following further provision: "9. Administrative Fee—The initial fee in the amount prescribed in the schedule in Rule IX (which contains a sliding scale of substantial fees based generally on the amount in controversy) shall be paid to the Administrator by each of the parties at the time of initiating the arbitration."

By Article II, sections 2, 3 and 4, the terms "Tribunal," "Administrator" and "Tribunal Clerk" are respectively defined as follows:

"2. Name of Tribunal—Any Tribunal constituted by the parties for the settlement of their dispute under these rules, shall be called the Commercial Arbitration Tribunal, hereinafter referred to as Tribunal.

"3. Administrator—When parties agree to arbitrate under these rules or provide for arbitration by the 'American Arbitration Association,' and an arbitration is initiated thereunder, they thereby constitute the American Arbitration Association, the Administrator of the arbitration. The authority and obligations of the Administrator are limited in the manner prescribed in the agreement of the parties and in these rules.

"4. Director of Tribunals and Tribunal Clerks—The duties of the Administrator may be carried out through a Director of Tribunals or other officers of the Administrator or such Tribunal Clerks, Committees or Agents as the Administrator may direct."

Succeeding articles of the Association's Rules provide for the appointment of arbitrators, the prescription of time for the conduct of arbitration, the manner of hearing, and, generally, the other steps and details incident to the accomplishment of arbitration and the making of the award. Those further provisions, as the court is persuaded, have not come into operation in this controversy and need not be set out in detail.

Neither party to this action has ever given to the other any written notice containing the matter prescribed in subsection (a), or filed with the Administrator, at any place, the items specified in subsection (b) of Article III, section 7, or paid any initial fee as required by Article III, section 9, all above quoted. The letters to Fremont Company of Wilson & Company, by the manager of its refinery department, dated November 5, 1946, and by Louis R. Simpson, its attorney, dated February 13, 1947, both noted in the earlier opinions of this court, were not intended to be, and are manifestly inadequate to constitute, such initiatory notice. And, apart from its pleadings in the litigation already mentioned and in this action, Fremont Company has not undertaken the initiation of arbitration. Nor have the parties to this suit ever commenced a voluntary arbitration of their controversy as contemplated by Article III, section 8, of the Rules of American Arbitration Association, which section deals with the mutual submission of an existing controversy to arbitration by voluntary agreement made after the onset

of the controversy, and is regarded by the court as irrelevant to the present litigation.

The court has carefully examined the several exhibits introduced and received in evidence upon the trial, including many items of correspondence between the parties, and has considered the oral evidence presented by the parties. Generally, those items may be said to confirm the history of the transactions recited in the court's former opinions. Insofar as they bear upon the merits of Wilson & Company's basic claim for damages against Fremont Company, either in the litigation of a suit for damages or in the course of an active and progressing arbitration upon the claim, they need not be set out in detail, for they have no present materiality. But it is noted and found that they reflect an actual and vigorously asserted controversy between the parties. That material also emphasizes and amplifies the admitted succession by Fremont Company to the position, rights and obligations of the original vendor under the broker's contract, out of which the relations of the parties arose, a matter admitted by both parties but not clearly or adequately set out in any of the earlier opinions of this court.

Of the suit in the District Court of Dodge County, Nebraska, the following facts are found. It was instituted on October 29, 1948, therefore, more than five months before the filing of the complaint in this action. In its petition there, Wilson & Company set out its claim of Fremont Company's breach of their contract and its own alleged damage resulting therefrom, for which, with costs, it prayed judgment. Summons was issued and duly served on Fremont Company, also on October 29, 1948. On November 18, 1948, Fremont Company filed a motion to dismiss for failure to give the security for costs required by Nebraska's law of a nonresident plaintiff, which, security having meanwhile been given, was overruled on November 24, 1948. On December 3, 1948, Fremont Company filed a motion to make the petition more definite and certain, which was overruled on April 4, 1949. On June 24, 1949, Fremont Company, having theretofore instituted this action, filed in the Dodge County, Nebraska, suit a motion for a continuance and stay of proceedings in that suit pending this court's determination of the issues now before it, but which had not then fully matured. That motion was argued before the State court on August 22, 1949, at which time the submission of further briefs was ordered. The court subsequently overruled the motion. Fremont Company answered later, praying for a stay pending arbitration, and also, upon the basis of certain defensive averments and denials, for the dismissal of the suit. After appropriate discovery proceedings and a pretrial conference, the suit proceeded to trial in the District Court of Dodge County, Nebraska, with a jury, commencing on September 19, 1949. At the conclusion of the trial on September 23, 1949, by mandatory direction of the trial judge, the jury found and returned a verdict in favor of Wilson & Company and against Fremont Company in the sum of $41,175, upon which judgment was entered forthwith for that sum with costs. Fremont Company filed seasonably a motion for a new trial. The case stands in that position as this memorandum is being written; but, of course, Fremont Company has the right, if its motion for a new trial be denied, to appeal from the judgment of the Dodge County District Court to the Supreme Court of Nebraska. The possibilities need not be carried further.

■ Wilson & Company reasserts in argument all of its formerly tendered objections to the imposition upon it of the obligation to suffer or participate in arbitration of its claim. These include the contentions, (a) that the contract between the parties does not contain a provision for arbitration; (b) that the contract does not evidence any contract involving commerce within the true meaning of Title 9 U.S.C.A. §§ 1 and 2; (c) that the application of any or all of the provisions of Title 9 U.S.C.A. is limited to contracts which do evidence a transaction involving commerce; and (d) that there is no arbitrable controversy between the parties. Items (a) and (b) of those positions are sufficiently discussed in the opinion reported in 77 F.Supp. 364.

But it may be added, without discussion or particularization, that the additional material now before the court in the way of letters between the parties and oral testimony serves clearly to confirm the court's earlier, and now reiterated, conclusion that the contract evidences a transaction involving commerce. In the court's opinion that conclusion eliminates the necessity of passing upon the academic question raised in item (c). And, touching the presence of an arbitrable controversy, the court, at this time, in view of the entire record before it, including the issues made by the pleadings in the Dodge County case, still considers and holds that that question must be answered in the affirmative.

■ Wilson & Company also presents, naturally for the first time, the question of the power of this court to enter a judgment whose inevitable eventual effect, as the parties agree, although not its immediate and explicit import, would be to stay proceedings in a State court. The former statutory prohibition of the stay by a Federal court injunctive order of proceedings in any State court, except as an incident to bankruptcy jurisdiction, see former Title 28 U.S.C.A. § 379, has been somewhat relaxed, or at least clarified, by the present Title 28 U.S.C.A. § 2283, whose language follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Recognizing and insisting upon the respect which the national courts must accord to the proceedings and judgments of the several State courts, this court, nevertheless, would not necessarily and in all circumstances be deterred, by the pendency of the State court action between the parties before it, from entering an order directing the parties to proceed to arbitration, if, in its opinion, the facts otherwise required or warranted such order.

■ No injunction is yet sought. If, after an order for arbitration, one were thought to be imperative and were asked for, the question might then be met. But that issue is not considered to be dispositive of the present action, and will not receive further discussion or determination.

■ The court is convinced that, under the facts as established and found, Fremont Company has failed to make out a case within the reach of Section 4 of the Arbitration Act. The determination of the action on its merits must be governed not loosely or vaguely by the mere fact that the parties have entered into some contract containing an arbitration clause, but rather by their respective positions measured and appraised in view of the concrete and positive provisions of the particular contract which they have admittedly made, and in the light of the provisions of section 4. Omitting irrelevant procedural prescriptions, section 4 follows: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. * * * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. * * * If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. * * * If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in pro-

974

ceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

■■ It is not, and has not been, asserted that the quoted section of the statute is operative automatically to withdraw from the jurisdiction of the United States District Courts, or to thwart the jurisdiction of the courts of the several states over, actions to recover damages for the breach of contracts containing provisions for arbitration. And the Arbitration Act has been held not to have such an effect. American Sugar Refining Co. v. The Anaconda, 5 Cir., 138 F.2d 765; The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117. It is true that the controversy considered in the cited opinions had to do with certain admiralty procedure; but the courts passing upon it wrote broadly on the issue of the contractual ousting of the jurisdiction of the traditional courts. See 138 F.2d at pages 766-767 and 322 U.S. at pages 44-45, 64 S.Ct. at pages 864-865. See also William S. Gray & Co. v. Western Borax Co., 9 Cir., 99 F.2d 239, and Radiator Specialty Co. v. Cannon Mills, 4 Cir., 97 F.2d 318, 117 A.L.R. 299. This court has not overlooked the following subjunctive language in the first sentence of the quoted section 4, supra: "Which, *save for such agreement,* would have jurisdiction," etc. But the jurisdiction otherwise unequivocally committed to the District Courts is not thus obliquely to be withdrawn or nullified. So, the right of Wilson & Company to bring its actions first here and later in the State court must be acknowledged.

■■ The considerations which moved the court in Wilson & Company v. Fremont Cake & Meal Company, D.C.Neb., 77 F. Supp. 364, to announce a ruling granting Fremont Company's motion for a stay of proceedings under Title 9 U.S.C.A. § 3, pending arbitration, are not alone adequate to compel the allowance of that company's present prayer for a mandate requiring arbitration under section 4 of the title. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S. Ct. 313, 79 L.Ed. 583; Kulukundis Ship-ping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978. In the former case all that was necessary to the allowance of the relief sought, beyond the existence of an arbitrable controversy and the absence of any facts invoking an estoppel, was a contractual right to proceed to arbitration. The stay of proceedings would have vindicated that right in both of the parties to the contract and provided the occasion and the time in which either of them might have initiated the arbitration process within the framework of their contract. But this action seeks something more and different. It demands the court's compulsion of arbitration, in effect a decree for the specific enforcement of the contract to that end. And it is grounded upon the statutorily imperative premise, see Title 9 U.S.C.A. § 4, that Fremont Company is *aggrieved* by Wilson & Company's *failure, neglect or refusal to arbitrate,* and that Wilson & Company is a *party in default* in the matter of arbitration.

■ But the provisions touching arbitration contained in the contract in suit are not self-executing. It will be observed from Article II, section 3 (supra) of the Rules of the Arbitration Association, that it claims and is given authority only "when parties agree to arbitrate under these Rules or provide for arbitration under the American Arbitration Association *and an arbitration is initiated thereunder*" (emphasis added). That language is followed by the specifications of Article III above quoted for the initiation of arbitration. Something more than a contractual right to arbitration is required. An arbitration must be initiated in furtherance of that right and in the manner prescribed therefor. As has already been observed, those specifications contemplate that, in default of mutual submission by stipulation, one of the parties shall initiate the arbitration process; and they provide the exact means by which that shall be done. Those means include (a) the giving to the other party of notice in writing of the moving party's intention to arbitrate, significantly characterized as a "demand," containing a statement of the nature of the dispute, the amount involved, and the remedy sought; (b) the filing with

the "Administrator" of two copies of that notice and two copies of the contract or of its essential parts; and (c) the payment of the "initial fee." Upon their pursuit by one of the parties, the other party is required to proceed in its behalf to the end that the issues in arbitration may be joined and the submission may go forward. But neither party, as the court construes the contract and its incorporated arbitration rules, is obliged to take the initiatory steps. They remain free to utilize the normal facilities of the courts, or otherwise to settle their differences without resort either to the courts or to arbitration. Neither party can be said, therefore, to be "in default" solely because it has not, on its part, initiated the arbitration procedure, or because it has had recourse to the courts. Nor, until the other party has made such initiation, is there any obligation in respect of which it can be in default or be charged with failure, neglect or refusal in performance.

Stated simply, until one party to the contract has pursued its prescribed initiatory steps, it has not made any "demand" and thereby decisively required the other party to answer, or to act upon, such demand for arbitration; and the vital condition precedent to a mandatory order to proceed to arbitration has not been performed.

That Fremont Company has taken none of those explicitly defined steps is established by stipulation and evidence. Its course in the entire controversy has been dilatory and obstructive only. It has taken no affirmative action looking to the resolution, by any forum, of its differences with Wilson & Company. Its claimed default in the delivery of soybean oil occurred late in 1946, nearly three years ago. Despite the early threats of Wilson & Company in two letters, supra, to invoke the arbitration clause of the contract, it remained silent touching arbitration and did not itself initiate the process or even assent to Wilson & Company's suggestion of its availability. Wilson & Company then sued in this court. Still, Fremont Company took no steps to commence arbitration. It obtained the ruling announcing the granting of its motion for a stay of proceedings in that suit, pending arbitration, which was made over the vigorous objection of its adversary on many grounds, including its position that it was not a party to any contract containing a valid agreement to arbitrate or any agreement whatsoever upon the subject. That motion did not demand, and the order if it had been entered, would not have required, that Wilson & Company initiate arbitration. The action contemplated was merely the suspension of the prosecution of the suit pending arbitration, presumably upon the initiation of Fremont Company, which, alone, contended for it. Even then, with its right to require arbitration vindicated, it remained silent and inert until the first case here had been dismissed and the Dodge County, Nebraska, case had been instituted and pressed for nearly six months, when it started this action. And it need not be asserted that the filing of this case is no substitute for the initiatory steps contractually defined for the setting on foot of arbitration.

■ Confronted with that history of inaction, this court finds that Wilson & Company has not "failed, neglected or refused to arbitrate," and is not "in default" in the performance of any obligation incident to arbitration within the meaning of Title 9 U.S.C.A. § 4; and that Fremont Company is not "aggrieved" by any default in that behalf on the part of Wilson & Company. Nagy v. Arcas Brass & Iron Co., 242 N.Y. 97, 150 N.E. 614; Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004; Radiator Specialty Co. v. Cannon Mills, supra.

■ The court is not unmindful of the admission in the pleadings by Wilson & Company that it has refused to arbitrate and a like, though somewhat qualified, stipulation upon the trial. But that "refusal" must be understood in its proper context. Denying its obligation to arbitrate under its contract, Wilson & Company has not initiated the arbitration process but has refused to do so and resorted, instead, to the courts. It clearly has not refused (or failed or neglected) to participate in arbitration proceedings started by its opponent, for none have been thus started.

■ Consideration has been given to the question whether the asserted denial of

the obligation to arbitrate relieves Fremont Company of the necessity of taking the initiatory steps in arbitration, if it desires to insist upon its right to that procedure. But the court holds that the question must be answered negatively. Here the very existence of an agreement for arbitration is in bona fide dispute. That the dispute is real and substantial is not altered by the circumstance that the court has heretofore announced its conclusion that there is such an agreement. Wilson & Company sincerely believes that the court was mistaken in that ruling. Such being the situation, Fremont Company ought to be required to take the definitive steps setting the arbitration machinery in motion, thus putting Wilson & Company under the necessity of determining whether, on the faith of its legal contention, it should "fail, neglect or refuse to arbitrate" and thereby enter into "default" in that respect.

The plaintiff's action is being dismissed with prejudice at its costs.