**LEESONA CORPORATION, Appellant,**

v.

**COTWOOL MANUFACTURING CORPO-RATION, JUDSON MILLS DIVISION, Deering Milliken Research Corporation, and Whitin Machine Works, Appellees.**

No. 8684.

United States Court of Appeals Fourth Circuit.

Argued Jan. 23, 1963.

Decided March 19, 1963.

See also 308 F.2d 895.

Robert F. Conrad, Washington, D. C. (Raymond P. DeMember, and Watson,

Cole, Grindle & Watson, Washington, D. C., on brief), for appellant.

Frederic P. Houston, New York City (James D. Poag, and Price & Poag, Greenville, S. C., Melvin Liebowitz and Otterbourg, Steindler, Houston & Rosen, New York City, on brief), for Deering Milliken Research Corp., appellee.

Before HAYNSWORTH, BOREMAN and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Arbitration provided for in a patent license covering machinery and processes has been temporarily stayed by the District Court from enforcement by appellant licensor who was seeking thereby to recover royalties of the licensee on products made with an assertedly infringing process and machine. The suspension is effective until the conclusion of a current suit instituted by the licensor against the alleged infringers. The licensor maintains here that neither the pendency of the suit, nor its outcome, may preclude licensor from a decision of the infringement and royalty issue by arbitration. It is both a contractual right based on the license, licensor asserts, and one secured also by the United States Arbitration Act, 9 U.S.C. §§ 1–14.

But we uphold the decree as a temporary injunction auxiliary to the defense of the licensor's suit. The order was one within the discretion of the trial judge and we find no misuse of his responsibility.

Licensor is the Leesona Corporation, the owner of three patents (the patent) covering certain textile machinery and processes. Licensee is Schwarzenbach Huber Company. The license, dated June 17, 1955, permits licensee itself to make the machines, or have them made, as well as to manufacture the products under the patented process. The arbitration clause is in these words:

"Any dispute or controversy arising under, out of, or relating to this agreement shall be submitted to arbitration in accordance with the rules

at the time prevailing of the American Arbitration Association, New York City, New York, U.S.A. The decision of the arbitrators shall be final and binding upon the parties hereto and shall be available to the parties hereto as the basis for judgment in any of the United States, at the instance of the party entitled to any award given by the said arbitrators."

The primary, accused infringer is Deering Milliken Research Corporation. In 1957 it obtained the exclusive right to allow the use in the United States of a process and machine devised and constructed in France and competing with the process and machine of licensor Leesona. Thereafter Whitin Machine Works obtained the exclusive right to manufacture and distribute the French machine in the United States. Deering and Whitin approved use of the French machine by Leesona's licensee Huber who then put it into productive operation. Thus Huber was at the same time a licensee of Leesona and a holder of use-rights on the French machine from Deering and Whitin.

Leesona charges first that the French process and machine are an infringement of its patent. It then claims, as initially noted, that Huber is using the French process and machine to turn out products protected by the Leesona patent. On this basis Leesona predicates its claim against Huber and invokes the arbitration clause of the license agreement.

Before the claim for arbitration was asserted, Leesona had commenced the present suit in the United States District Court for the Western District of South Carolina against Cotwool Manufacturing Corporation, an affiliate of Deering. It averred infringement by Cotwool in using, under permit of Deering and Whitin, one of the French machines at its South Carolina plant. Whitin then began an action in the Federal District Court in Massachusetts for a declaratory judgment to the effect that Leesona's patent was invalid. Later, Deering and Whitin were made parties defendant to Leesona's South Carolina action.

At the instance of Whitin and for the convenience of the parties the District Court severed Leesona's complaint as against Whitin and transferred that part of the litigation to the Massachusetts Federal District Court. The South Carolina Court simultaneously suspended further proceedings in the action as against Deering and Cotwool. We heretofore approved the severance, transfer and suspension. Leesona Corp. v. Cotwool Manufacturing Corp., 308 F.2d 895 (4 Cir. 1962).

With the issue of infringement thus before the Massachusetts District Court, the District Judge in South Carolina believed the arbitration demanded by licensor Leesona of licensee Huber should be stayed until a determination of the litigation in Massachusetts, inasmuch as the arbitrator would have the same question before him.

Leesona argues that the Court had no authority so to interfere with the contractual right and obligation established by the license as between Leesona and Huber. It urges that the intent of the parties to save expense and time by providing for arbitration in lieu of suit to resolve their differences has been thwarted. It acknowledges the accepted practice of enjoining related suits to enforce a patent until its validity has been adjudged in an action pending between the principal parties to determine that question. Telephonics Corp. v. Lindly & Co., 291 F.2d 495 (2 Cir.1961); International Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583, 585–586 (4 Cir.1953). Nevertheless this course is not appropriate here, Leesona continues, first because the parties have expressly contracted otherwise, and secondly, because the underlying reason for the procedure is absent, the court decision in Massachusetts having no binding effect in the arbitration between licensor and licensee. Leesona also emphasizes its objection to the decree by stressing that the stay was grant-

ed at the instance of Deering, not of licensee Huber who was not a party to the suit.

■ The answer to this argument, however, is that the decree does not abrogate the arbitral clause and in no degree passes upon its validity or efficacy. Access to arbitration is not barred but only intermitted. The injunction is no more than it has been denominated, a "stay", altogether ancillary and temporary. That a contractual clause for arbitration is subject to suspension by injunction has been recognized. Amazon Cotton Mills Co. v. Duplan Corp., 245 N.C. 496, 96 S.E.2d 267, 270 (1957). The injunction is clearly incident to the defense of Leesona's suit.

■ In these circumstances the issuance of an injunction—whether considered interlocutory or final—is something within the judgment of the chancellor. He balances the equities: the injury to applicant if the decree is not allowed, and the injury to the opponent if the restraint is granted. If he acts with concern for the rights of both parties upon a reasonable foundation, his determination will not be disturbed.

The District Court quite comprehensively considered all of the arguments of Leesona. However, it believed them outweighed by other consequences which might reasonably be expected to follow immediate pursuit of arbitration. On this subject, District Judge Wyche said:

> "In view of the identity of the infringement issue, it seems likely that continued prosecution of the arbitration proceeding may cause irreparable injury to Research [Deering], to Whitin and to Schwarzenbach [Huber]. Before this action is concluded, customers and prospective customers of Research [Deering] and Whitin (who are also licensed under the [French machine] patents in suit), fearing arbitration proceedings and litigation, may turn from 'FT [French] Machines' to competitive machinery and a later decision

by this Court favorable to Research [Deering] and Whitin could not repair the damage.

> "The arbitration decision cannot be set aside for errors of law or fact. Consequently, a prior unfavorable decision by the arbitration panel would bind Whitin's customer (and Research's [Deering's] licensee) Schwarzenbach [Huber] despite a later decision by this Court in favor of Research [Deering] and Whitin. The result would be an anomalous situation wherein Schwarzenbach [Huber] would have to pay royalties to Leesona for 'FT [French] Machine' production although this Court would have held that the licensed patents do not cover 'FT [French] Machines'."

True, delay will result, but it is noteworthy that the demand for arbitration, as the District Judge remarks, was not presented by Leesona until its litigation had been pending for more than a year. Again, a staunch, practical reason exists for the delay: the ruling of the Federal Court in Massachusetts upon infringement will be highly persuasive, if not dispositive, in the decision of the arbitrator.

The principles we have discussed are expounded with clarity in Hecht Co. v. Bowles, 321 U.S. 321, 329–330, 64 S.Ct. 587, 591–592, 88 L.Ed. 754 (1944), by Mr. Justice Douglas:

> "We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. Winter Haven, 320 U.S. 228, 235 [64 S.Ct. 7, 88 L.Ed. 9]. The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each de-

cree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. * * * "

See also Rackley v. Board of Trustees, 310 F.2d 141 (4 Cir.1962); Smith v. Staso Milling Co., 18 F.2d 736, 738 (2 Cir.1927); 7 Moore, Federal Practice 1686–87 (2 ed. 1955).

The District Judge has closely adhered to these fundamentals and his decree is not without warrant in equity and justice.

Nor do we feel that in holding the arbitration in abeyance the decree breaches the Arbitration Act, 9 U.S.C. §§ 1–14. The District Court, to repeat, has not declined to recognize or enforce the arbitration provision. It has merely postponed resort to that remedy until termination of litigation commenced by Leesona. If after judicial settlement of that controversy Leesona still desires arbitration, it remains available.

■■ The Act does not oust the jurisdiction of the court. Equity may still prevent premature use of the clause. The statute itself envisages exertion by the court of equitable checks and balances; supervision of the arbitration by the court is expected. See Radiator Specialty Co. v. Cannon Mills, Inc., 97 F.2d 318, 319, 117 A.L.R. 299 (4 Cir.1938); American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115 (6 Cir.1948), cert. denied, 336 U.S. 909, 69 S.Ct. 515, 93 L. Ed. 1074 (1949); Fremont Cake & Meal Co. v. Wilson & Co., 86 F.Supp. 968 (D. Neb.1949), aff'd, 183 F.2d 57 (8 Cir. 1950); cf. Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp., 293 U.S. 449, 452–453, 55 S.Ct. 313, 79 L.Ed. 583 (1935).

We find no fault in the decree on review.

Affirmed.