570 F.2d 875
 Fed. Sec. L. Rep. P 96,312
Vern CROWLEY, Richard Mansfield, Jerry Wall, Douglas Barton,
Jayne Barton, William Dubois, Wendell Winegar, and
David Dittman, Plaintiffs-Appellants,
v.
MONTGOMERY WARD & CO., INC., Defendant-Appellee.
 No. 74-1476.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted March 28, 1975.
Decided May 14, 1975.
 
 M. Richard Walker, Salt Lake City, Utah (Robert J. Debry, Salt Lake City, Utah, on the brief), for plaintiffs-appellants.
 Dennis McCarthy, Salt Lake City, Utah (Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), for defendant-appellee.
 Before LEWIS, Chief Judge, and BREITENSTEIN and BARRETT, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 In this class action the plaintiffs-appellants claim that defendant-appellee Montgomery Ward & Co. violated the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., by the issuance of a "Catalog Sales Agency Agreement." The district court sustained a motion to dismiss on the ground that the agency agreement was not a security. We reverse.
 
 
 2
 The record consists of two complaints, an order of consolidation, a motion to dismiss without any supporting material, and the dismissal of the actions by an order which, without any amplification, says that the agency agreements are not securities within the purview of the two acts. In the circumstances our review is confined to the allegations in the complaints and their attachments.
 
 
 3
 Wards is engaged nation-wide in the sale of general merchandise. In 1973 it sales exceeded three billion dollars. In addition to department stores it operates catalog sales agencies. Agency sales are made through Wards' catalog. Wards, in order to conduct and operate these agencies, sells "investment contracts (or franchises) to members of the general public."
 
 
 4
 The agreement requires the Agent to provide an "Agency Store" at his own cost and to maintain the store, at his expense, in a manner consistent with the business reputation of Wards. Wards furnishes fixtures, equipment, and an exterior sign at stated prices. Wards agrees to sell, and Agent to buy, display merchandise in the minimum amounts and types provided in Wards' "Current Policies and Procedures." Agent is required to "devote his full time and best efforts to the operation of the Agency." He receives and processes orders which are transmitted to Wards. He must provide at his cost the labor needed to satisfy "in-warranty service." To compensate Agent, Wards pays commissions in accordance with a schedule. Variations and modifications of the agreement must be in writing.
 
 
 5
 Wards' brochure on the "Catalog Sales Agency Program" says:
 
 
 6
 "(Y)ou are responsible for the control of expenses which must be paid from your gross income. Your own management abilities and the effort you devote toward using Montgomery Ward programs to build your business will, to a great extent, determind (sic) your success."
 
 
 7
 "But we know from practical experience that the Montgomery Ward name and know-how (not to mention Ward merchandise and prices) combined with the conscientious efforts of an able Agency owner, will build an operation that's happy and profitable . . . for all concerned."
 
 
 8
 Each Act defines "security" to include any "investment contract." See 15 U.S.C. § 77b(1) and 78c(a)(10). The Acts are remedial legislation which must be broadly construed to effectuate their purposes. Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564. In determining the meaning and scope of the word "security," "form should be disregarded for substance and the emphasis should be on economic reality." Ibid. In defining an investment contract, Securities & Exchange Commission v. W. J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244, says:
 
 
 9
 "The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."
 
 
 10
 See also Continental Marketing Corp. v. Securities and Exchange Commission, 10 Cir., 387 F.2d 466, 470, cert. denied 391 U.S. 905, 88 S.Ct. 1655, 20 L.Ed.2d 419.
 
 
 11
 We have here the investment of money by plaintiffs in a common enterprise with Wards and the expectation of profits. The problem arises from the word "solely" in the Howey definition. The Agency Agreement before us requires the Agent to "devote his full time and best efforts to the operation of the Agency." A mechanical application of "solely" would defeat plaintiffs' claim that the Agency Agreement is an investment contract, and hence a security. This approach runs contrary to the broad remedial purposes of the Acts and rejects consideration of "economic reality." We believe that it cannot be said as a matter of law that the agreement with which we are confronted is not an investment contract. We agree with Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc., 9 Cir., 474 F.2d 476, 482, cert. denied 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53, that the test is "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise."
 
 
 12
 Plaintiffs' investments gave them the right to sell Wards' merchandise at prices fixed by Wards. Success of the enterprises depends not only on plaintiffs' efforts but also on the quality, availability, and competitive prices of the merchandise, all of which are controlled by Wards and affect the outcome of the venture. In these circumstances, determination of economic reality requires a factual inquiry.
 
 
 13
 In Continental Marketing Corporation v. Securities and Exchange Commission, 10 Cir., 387 F.2d 466, and Mr. Steak, Inc. v. River City Steak, Inc., 10 Cir., 460 F.2d 666, both the trial courts and the court of appeals gave consideration to the facts in determining whether an investment contract was a security. So also did the Ninth Circuit in Bitter v. Hoby's International, Inc., 9 Cir., 498 F.2d 183, and Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc., 9 Cir., 474 F.2d 476.
 
 
 14
 Wards relies on Lino v. City Investing Co., 3 Cir., 487 F.2d 689, where the question was disposed of on a motion to dismiss. However, in that case the trial court did recognize the economic reality test and applied it to an analysis of the agreement and brochure. In the instant case, the trial judge's order said nothing about economic reality, made no analysis, and dismissed the actions. We do not approve of this cavalier treatment of the investment contract issue.
 
 
 15
 We express no opinion on whether the Agency Agreement is an investment contract. All we hold is that on the record before us the issue may not be determined as a matter of law. Consideration must be given to "economic reality" and the word "solely" as used in the Howey definition must not be given an unduly restrictive application.
 
 
 16
 Reversed and remanded for further proceedings in the light of this opinion.