**Donna Gates MEYER and Diana Meyer Reynolds, Plaintiffs-Appellants,**

v.

**DANS un JARDIN, S.A. (a corporation), Dans un Jardin, Inc. (a corporation), Century Franchising Co., Inc. (a corporation), Lucille de Baudry d'Asson and Gordon Morford, Defendants-Appellees.**

No. 84–2738.

United States Court of Appeals, Tenth Circuit.

April 17, 1987.

**534**

Richard D. Hampton and James C. Hanna, Oklahoma City, Okl., for plaintiffs-appellants.

Pierre Cournot of Richard K. Bernstein Associates, New York City, for defendants-appellees.

Before LOGAN, SEYMOUR and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 34.1.8(c) and 27.-1.2. The cause is therefore ordered submitted without oral argument.

In March 1982 plaintiffs, Donna Gates Meyer and Diana Meyer Reynolds, entered into a franchise agreement with defendant Century Franchising Company, an American subsidiary of defendant Dans un Jardin, S.A., a French corporation. Plaintiffs paid an initial franchise fee of $15,000, plus $5,000 to cover start-up promotional expenses. Under the agreement, plaintiffs were to own and operate a retail boutique in Oklahoma City, Oklahoma, for the sale of beauty and perfumery products manufactured or distributed by defendants. The boutique opened for business in June 1982 and ceased operating approximately ten months later, having failed to cover its costs.

In their suit against defendants, plaintiffs alleged that the franchise agreement constituted a security under both federal and state securities laws and that defendants were liable to them for various misrepresentations and omissions in violation of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Securities Exchange Commission Rule 10b–5 (17 C.F.R. § 240.10b–5), and § 408 of the Oklahoma Securities Act, Okla.Stat.Ann. tit. 71. Plaintiffs also alleged common law fraud.

The district court granted defendants' motion for summary judgment on the securities law claims, finding that the franchise agreement was not a security under the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), and not an investment contract as defined in Okla.Stat.Ann. tit. 71, § 2(20)(P). The court dismissed plaintiffs' other state law claims in favor of arbitration, as demanded by defendants, pursuant to paragraph 7.4 of the franchise agreement. The issues on appeal are whether these determinations were erroneous.

I

A

■ We first consider whether the franchise agreement in the instant case is a security under the federal law. The Securities Act of 1933 and the Securities Exchange Act of 1934 contain virtually identical definitions of the term "security." 15 U.S.C. §§ 77b(1) and 78c(a)(10); *Tcherepnin v. Knight*, 389 U.S. 332, 335–36, 88 S.Ct. 548, 552–53, 19 L.Ed.2d 564 (1967). Neither definition refers specifically to franchise agreements. Both, however, contain the general term "investment contract." In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Court said that "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 298–99, 66 S.Ct. at 1103.

Under a strict application of the *Howey* test, it is clear that the franchise agreement in this case would not constitute an investment contract, because plaintiffs did not expect their profits to come *solely* from the efforts of others. Plaintiffs expected to commit and did commit their full time and best efforts to the management of their retail store in attempting to make it profitable.

In many situations, however, a strict interpretation of the word "solely" would run counter to the broad remedial purposes of the securities acts and defeat the Court's intent to follow "a flexible rather than a static principle." *Howey,* 328 U.S. at 299, 66 S.Ct. at 1103. Accordingly, we have adopted the view that the reliance element is met when " 'the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.' " *Crowley v. Montgomery Ward & Co.,* 570 F.2d 875, 877 (10th Cir.1975) (*Crowley I*) (quoting *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973)).[1]

It is undeniable that the product, the reputation, and the promotional and managerial expertise developed by a franchisor are material to the success of its franchisees. Benefits expected from the franchisor provide incentives for entering into a franchise agreement rather than undertaking a wholly independent business. But that does not mean the typical franchisee can expect to profit from the investment without regard to the franchisee's own business skills. *See Mr. Steak, Inc. v. River City Steak, Inc.,* 460 F.2d 666, 670 (10th Cir.1972) (contrasting franchise with "the usual investor-promoter situation, where the skill or ingenuity of the investor does not determine the success or failure of the venture").

In *Crowley v. Montgomery Ward & Co.,* 570 F.2d 877 (10th Cir.1978) (*Crowley II*), we held that a franchise agreement was not a security even under the less restrictive test adopted in *Crowley I.* The plaintiffs in *Crowley* entered into "Catalog Sales Agency Agreements" with Montgomery Ward. The agreements required the plaintiffs to provide and maintain "Agency Stores" at their own expense, to purchase and display merchandise in the minimum amounts and types provided by Montgomery Ward, and to devote their "full time and best efforts to the operation of the Agency." *Crowley I,* 570 F.2d at 876. The plaintiffs were able to sell merchandise at a discount if they were willing to accept a smaller profit margin, and they "had the responsibility of hiring and firing personnel, maintaining customer relationships, and making practically all of the decisions relating to the day-to-day operation of the agency." *Crowley II,* 570 F.2d at 880–81. Under those circumstances, we concluded that the economic success of each franchise was primarily dependent on factors controlled by the franchisee, not factors controlled by the franchisor.

The facts in this case are substantially identical to those we considered in *Crowley II.* Under the franchise agreement here, the plaintiffs were responsible for constructing the franchise store, paying rent, salaries, and advertising expenses, hiring and firing employees, maintaining customer relationships, ordering inventory, and devoting their full time and best efforts to the day-to-day management of the franchise store. The defendants' role was essentially limited to providing merchandise and promotional materials at plaintiffs' expense, conducting training seminars, and assisting plaintiffs in the commencement of their operation. We see no basis for distin-

---

**1.** The Supreme Court has since used similar language without expressly approving the change in emphasis. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975) ("The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Daniel,* 439 U.S. 551, 561, 99 S.Ct. 790, 797, 58 L.Ed.2d 808 (1979) (quoting *Forman* ).

guishing *Crowley* from the case at bar. *Accord Mr. Steak, Inc. v. River City Steak, Inc.,* 460 F.2d 666, 670 (10th Cir. 1972) (restaurant franchise not a security).[2]

The plaintiffs argue that the district court should have applied the "risk capital" test derived from *Silver Hills Country Club v. Sobiesky,* 55 Cal.2d 811, 361 P.2d 906, 13 Cal.Rptr. 186 (1961), before concluding that the franchise agreement was not an investment contract. Under this test, a security is present whenever the investors' funds provide the initial or "venture" capital needed to develop a new enterprise over which the investors exercise little or no managerial control. *Id.* at 815, 361 P.2d at 908, 13 Cal.Rptr. at 188.[3] To the extent that reliance on the managerial efforts of others remains an essential element of the risk capital test, application of this test would not affect our result. *See SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 477 n. 7 (5th Cir.1974) ("the element of managerial control is implicit in the risk capital test"); *United California Bank v. THC Financial Corp.,* 557 F.2d 1351, 1358 (9th Cir.1977) ("The combination of 'economic realities' standard plus the [Su-

preme] Court's emphasis on an expectation of profits from the entrepreneurial efforts of others are encompassed in this circuit's 'risk capital' test.").[4] To the extent that the risk capital test differs from the *Howey* test as reaffirmed in *Forman,* 421 U.S. at 852, 95 S.Ct. at 2060, and *Daniel,* 439 U.S. at 558, 561, 99 S.Ct. at 797, we must follow the Supreme Court's formulation.[5]

## B

Plaintiffs contend that the district court erred in granting defendants' motion for summary judgment on plaintiffs' federal securities fraud claims before plaintiffs were able to complete discovery. They point to the district court's order granting the plaintiffs' Motion to Require Further Answers to Interrogatories and for Complete Production of Documents, filed on the same day as the summary judgment order. Although the court's two orders appear to conflict, we hold that the district court did not act prematurely in granting summary judgment.

Application of the federal securities acts in this case is inappropriate because of the

---

**2.** The other federal circuit courts are also virtually unanimous in rejecting application of the securities laws to conventional franchising arrangements in which profits are primarily dependent on the efforts of the franchisee. *See, e.g., Villeneuve v. Advanced Business Concepts Corp.,* 730 F.2d 1403, 1404 (11th Cir.1984) (en banc) (distributorship for sale of self-watering planters not a security); *Bitter v. Hoby's International, Inc.,* 498 F.2d 183, 185 (9th Cir.1974) (restaurant franchise not a security); *Lino v. City Investing Co.,* 487 F.2d 689, 693 (3d Cir. 1973) ("Franchise Sales Center Licensing Agreements" not securities); *Nash & Associates, Inc. v. Lum's of Ohio, Inc.,* 484 F.2d 392, 395 (6th Cir.1973) (restaurant franchise not a security).

**3.** The risk capital test was accepted in *State v. Consumer Business System, Inc.,* 5 Or.App. 19, 27, 482 P.2d 549, 553–54 (1971), and *State v. Hawaii Market Center, Inc.,* 52 Hawaii 642, 648, 485 P.2d 105, 109 (1971), but rejected in *Bitter v. Hoby's International, Inc.,* 498 F.2d 183, 185 (9th Cir.1974). We found it inapplicable on the facts in *Mr. Steak, Inc. v. River City Steak, Inc.,* 460 F.2d at 670–71. *See also Nash & Associates, Inc. v. Lum's of Ohio, Inc.,* 484 F.2d 392, 395 (6th Cir.1973).

**4.** In *State v. Consumer Business System, Inc.,* 5 Or.App. 19, 482 P.2d 549 (1971), an Oregon court, applying the risk capital test, held that a

franchise agreement was a security under Oregon law despite the active participation of the franchisee. The court analyzed the franchise arrangement as involving two separate investments: an investment of money in the franchisor's business, and an investment of time and effort in the franchisee's business. Since the franchisee did not participate in conducting the franchisor's business, the first investment constituted a security. *Id.* at 30, 482 P.2d at 555. This argument, however, ignores the fact that the two investments are not expected to yield separate profits. The franchisee can only hope to receive a return on his investment in the franchisor's business by succeeding in his own.

**5.** In discussing the expectation of profits element in *Forman,* the Court considered, but did not adopt, the risk capital test. 421 U.S. at 857 n. 24, 95 S.Ct. at 2063 n. 24. In *Daniel,* the Court held that a noncontributory, compulsory pension plan was not a security, in part because any "profit" derived from participation in the plan would depend primarily on the employee's efforts to meet the plan's vesting requirements, rather than the trustee's successful management of the fund's assets. 439 U.S. at 561–62, 99 S.Ct. at 797.

degree to which plaintiffs' managerial efforts were expected to affect their profits from the franchise arrangement. Depositions, exhibits and other materials before the court indicate that plaintiffs expected to play an active and essential managerial role in operating the franchise store. The further answers to interrogatories and production of documents sought by plaintiffs relate primarily to defendants' business organization and financial structure and do not concern the franchise agreement at issue here.

■ When the pleadings, depositions, answers to interrogatories, and other material on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment need not be denied "merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 627 (Fed.Cir.1984). The nonmoving party has the burden of showing by affidavit how additional time will enable him to rebut the movant's allegations. *Patty Precision v. Brown & Sharpe Manufacturing Co.,* 742 F.2d 1260, 1264 (10th Cir.1984); *see also Wallace v. Brownell Pontiac-GMC Co., Inc.,* 703 F.2d 525, 527 (11th Cir.1983) (nonmovant may not rely on "vague assertions that additional discovery will produce needed, but unspecified, facts"). Plaintiffs have failed to make such a showing. We therefore affirm the district court's grant of summary judgment to the defendants on the federal securities claims.

## II

The franchise agreement agreed to by plaintiffs calls for arbitration of all disputes concerning the agreement.[6] The district court held that the franchise agreement was not an investment contract under the Oklahoma Securities Act, but dismissed the other state law claims in favor of arbitration pursuant to the agreement. Plaintiffs argue that the agreement's arbitration provision conflicts with Okla.Stat.Ann. tit. 71, § 408(g), which voids any provision waiving compliance with Oklahoma securities law. Accordingly, they argue, § 408(g) must prevail and the district court erred in dismissing plaintiffs' state law claims on the basis of the arbitration clause.[7]

■ The state statutory provision relied upon by plaintiffs must yield to conflicting federal statutes. *Louisiana Public Service Commission v. Federal Communications Commission,* — U.S. —, —, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (U.S.1986). Under the Federal Arbitration Act, 9 U.S.C. §§ 1–14, arbitration provisions in contracts involving interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the Act requires the district court, on application of either party, to stay its proceedings upon any issue referable to arbitration under such a contract provision, "providing the applicant for the stay is not in default in proceeding with such arbitration."

Defendants' answer raised the arbitration clause as an affirmative defense. In their motion for summary judgment, de-

---

6. Paragraph 7.4 of the franchise agreement provides:

> "The formation, interpretation, and performance of this Agreement will be governed by the laws of the State of New-York, excluding choice of law principles, and exclusive jurisdiction for the resolution of *any* dispute concerning the formation, interpretation and performance of this Agreement is hereby vested in the American Arbitration Association located in New-York City."

R. I, 26 (emphasis added).

7. Defendants have made no claim for arbitration of the federal law issue; they concede that the plaintiffs were entitled to have their federal securities claims adjudicated in the district court. Appellees' Brief, Exhibit A at 16. Thus we have no need to consider the enforceability of a predispute agreement to arbitrate claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), an issue raised but left undecided by the Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 215–16 n. 1, 105 S.Ct. 1238, 1239–40 n. 1, 84 L.Ed.2d 158 (1985). In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore,* 590 F.2d 823, 827–28 (10th Cir.1978), we held that agreements to arbitrate such claims were unenforceable.

fendants requested that the court either dismiss the entire case or stay its proceedings to permit plaintiffs' state law claims to be submitted to arbitration. Plaintiffs do not contend that defendants are in default in proceeding with arbitration. Instead, they argue that the Federal Arbitration Act does not apply to claims arising under state securities acts.

In *Kroog v. Mait*, 712 F.2d 1148 (7th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984), the court rejected an identical argument based on a provision of the Wisconsin securities statutes. Finding a "naked and irreconcilable conflict between a precise federal mandate to arbitrate and a state provision which prevents arbitration," the court held that federal preemption was automatic. *Id.* at 1154 (citing *Pacific Gas & Electric Co. v. State Energy Resource Conservation & Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)).

After the district court decided this case, the Supreme Court held, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), that when a complaint raises both federal securities claims and pendent state law claims, the district court must grant a motion to compel arbitration of the state law claims pursuant to a valid arbitration agreement "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217. The Court subsequently vacated a Florida Supreme Court decision that claims under state securities laws were exempt from the provisions of the Federal Arbitration Act, and remanded for reconsideration in light of its opinion in *Dean Witter*. *Oppenheimer & Co. v. Young*, 470 U.S. 1078, 105 S.Ct. 1830, 85 L.Ed.2d 131 (1985). On remand, the Florida Supreme Court concluded that *Dean Witter* required enforcement of an agreement to arbitrate state securities claims. *Oppenheimer & Co. v. Young*, 475 So.2d 221, 222 (Fla.1985). We agree.

■ Plaintiffs' state law claims are clearly referable to arbitration under paragraph 7.4 of the franchise agreement which provides for arbitration of "any dispute concerning the formation, interpretation and performance" of the agreement. This is so, notwithstanding the plaintiffs' allegations of fraud. Even a claim of fraud in the inducement of the entire contract containing an arbitration clause is to be referred to arbitration pursuant to an application under 9 U.S.C. § 3. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In passing upon such an application, a federal court may consider only issues relating to the making and performance of the arbitration agreement itself. *Id.* at 403–04, 87 S.Ct. at 1805–06. In this case, plaintiffs do not claim that they were fraudulently induced to enter into the arbitration agreement. In her deposition, Donna Gates Meyer admitted having read paragraph 7.4 before signing the agreement. Therefore, the district court was correct in determining that the agreement to arbitrate was enforceable with respect to plaintiffs' state law claims.

■ In entering its order, however, the district court erred in two respects. First, having determined that plaintiffs' state law claims should be submitted to arbitration, the court lacked power to proceed at this time to the merits of those claims. *Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806; *Merit Insurance Co. v. Leatherby Insurance Co.*, 581 F.2d 137, 142 (7th Cir.1978). Accordingly, it should not have decided whether the franchise agreement was subject to the Oklahoma Securities Act.

Second, the court should have retained jurisdiction over the action by staying its proceedings, rather than dismissing the plaintiffs' state law claims. Because the parties are of diverse citizenship, the district court has jurisdiction over those claims pursuant to 28 U.S.C. § 1332. The Federal Arbitration Act does not oust the district court's jurisdiction over claims subject to arbitration. *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 44, 64 S.Ct. 863, 864, 88 L.Ed. 1117 (1944); *Leesona Corp. v. Cotwool Manufacturing Corp.*, 315 F.2d 538, 542 (4th Cir.1963). Section 3 of the Federal Arbitra-

tion Act contemplates continuing supervision by the district court to ensure that arbitration proceedings are conducted within a reasonable period of time, thus preventing any impairment of the plaintiffs' rights to seek relief. *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.,* 339 F.2d 440, 441–42 (2d Cir.1964); *Leesona Corp.,* 315 F.2d at 542.

We affirm the district court's judgment for defendants on plaintiffs' federal securities claims. We vacate the remainder of the district court's judgment and remand with instructions to enter an order staying further proceedings in the district court pending arbitration of plaintiffs' state law claims.