**TEPPER REALTY COMPANY and Tepper's Plainfield, Inc., Plaintiffs,**

v.

**MOSAIC TILE COMPANY, Mosaic Building Products, Inc., and F. H. Sparks Co., Inc., Defendants.**

*No. 66 Civ. 2072.*

United States District Court
S. D. New York.

Sept. 20, 1966.

are bound to decide against the Secretary. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

Spitzer & Feldman, New York City, for plaintiffs (Philip Feldman, Allan D. Goodridge and Christopher J. Taylor, New York City, of counsel).

Nixon, Mudge, Rose, Guthrie & Alexander, New York City, for defendants Mosaic Tile Co. and Mosiac Building Products, Inc. (Robert R. Thornton, New York City, of counsel).

Epstein & Conway, New York City, for defendant F. H. Sparks Co., Inc.

## OPINION

MacMAHON, District Judge.

Defendants Mosaic Tile Company (Mosaic) and Mosaic Building Products, Inc. (Building Products), by separate applications, move pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, for orders staying trial of this action pending arbitration.

The complaint asserts two "causes of action," the first for breach of two written contracts and breach of warranty, and the second, alternatively, for negligence in the performance of the contracts. In the first contract (Complaint, Exhibit A) between the defendant Building Products and plaintiff Tepper Realty Company (Tepper Realty),[1] Building Products agreed to supply exterior wall paneling for installation on a building owned by Tepper Realty and occupied as a department store by Tepper's Plainfield, Inc. (Tepper's). In the second contract (Complaint, Exhibit B), defendant F. H. Sparks Co., Inc. (Sparks) agreed to install the paneling for Tepper Realty.

Plaintiffs oppose the motions asserting (1) that there is no arbitration agreement in existence, (2) that, even if there is, there are triable issues of fact as to whether defendant Mosaic and plaintiff Tepper's are parties to the arbitration agreement which must be resolved by the court before the action is stayed, and (3) that, in any event, Tepper's negligence claim should not be stayed.

Jurisdiction is grounded on diversity, and the Federal Arbitration Act is invoked on the conceded interstate nature of the transaction.

Arbitration is, of course, a creature of contract.[2] The initial issue on these motions is whether an arbitration agreement exists.[3]

There is no dispute that a document (Complaint, Exhibit C) which is labeled "Specification For New Store Fronts For Tepper's Store, West Front Street & Somerset Street, Plainfield, New Jersey, Charles H. Detwiller, Jr., Architect," contains a clause which reads:

> "Arbitration. Should disagreement arise under the Contract the Owner and the Contractor shall each appoint an arbitrator and the two arbitrators shall jointly select a third arbitrator. The decision of a majority of such three arbitrators shall be binding on all parties concerned."

There is a sharp dispute, however, as to whether this arbitration clause of the Detwiller specifications was an integral part of the contracts upon which this action is based. Plaintiffs, opposing the motions, now contend that there was no agreement to arbitrate. They assert that the specifications were not incorporated into either of the contracts and were not even annexed to the first one. They make no claim of fraud, misrepresentation, or deceit. Defendant Mosaic asserts that the specifications were an integral part of the contracts. For-

---

1. Exhibit A to the complaint recites that defendant Sparks is also a party to the first contract, but Sparks did not sign the first contract.

2. United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

3. American Airlines, Inc. v. Louisville & Jefferson County Air Bd., 269 F.2d 811, 817 (6th Cir. 1959); Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 985 (2d Cir. 1942).

tunately, we find that the documents annexed to the complaint as Exhibits A, B, and C speak for themselves.

It is clear that the supply contract between plaintiff Tepper Realty and defendant Building Products (Complaint, Exhibit A) provides that Building Products agrees to supply exterior panels to Tepper Realty for installation on the store front of Tepper's in Plainfield, New Jersey, in accordance with designated drawings and specifications which expressly include "preliminary drawings as prepared by Charles H. Detwiller, Jr., Architect, specifications of said Charles H. Detwiller, Jr. * * * all of which said instruments are annexed hereto. * * * " The second contract (Complaint, Exhibit B) between plaintiff Tepper Realty and defendant Sparks for installation of the panels contains identically the same provisions as the first, and there is no dispute that the Detwiller specifications were annexed to the second contract.

We think it self-evident that the label on the specifications of Charles H. Detwiller, Jr., leaves no room for doubt that the specifications referred to as annexed to the first contract are indeed the same Detwiller specifications annexed to the second. Whatever doubt there might be on that question is vanished by Fogarty's statement that the Detwiller specifications were in fact annexed to the first contract. That averment stands uncontradicted. Without more, we think this is sufficient to make the Detwiller specifications and the arbitration clause which they contain an integral part of the contracts between the parties. But, if more is needed, it is supplied by plaintiffs' own complaint (para. 9) which states: "Copies of said agreements *and of the specifications referred to in said agreements* are annexed hereto, marked Exhibits A, B and C, respectively, and made part of this complaint. * * * " Moreover, the very first paragraph of the specifications, which plaintiffs allege are the ones "referred to in said agreements," provides that:

"These Specifications together with the Drawings and the Contract, including any supplements or amendments thereto shall be considered as the 'Contract Documents' and shall be considered as one document with each supplementing and clarifying the others."

▮▮▮ In the face of the complaint and the express provisions of the written contracts, plaintiffs' contention that there is no arbitration agreement simply because the parties to the agreements did not choose to express an arbitration clause in the body of their contracts or resort to the rubric of incorporating the specifications by express reference is untenable. The question is not whether the parties, like the scrivener of old, followed some talismanic formula, but whether they manifested a mutual intent to arbitrate disputes arising out of the contracts, and it is plain on the immutable facts that they did.

We turn then to plaintiffs' contention that there are triable issues respecting whether plaintiff Tepper and defendant Mosaic were parties to the contracts which must be resolved by the court before arbitration is compelled or this action stayed.

Indisputably, neither Tepper nor Mosaic is named as a party on the face of the contracts or the annexed specifications. Moreover, Mosaic asserts that it was not a party to them, and that it intends so to allege in its answer. Plaintiffs, however, assert in their complaint that both Tepper (as the principal of Tepper Realty) and Mosaic (as the alter ego of Building Products) were in fact or in law parties to the contracts upon which this suit is founded (Complaint, paras. 9, 10).

▮▮▮ Pointing to this dispute and relying on Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, plaintiffs insist that the issue of fact thus created must be tried summarily before arbitration is

compelled or this action stayed.[4] The short answer to plaintiffs' contention is that this is not a proceeding to compel arbitration under § 4, but a motion to stay arbitration under § 3. Different equitable considerations obtain on a motion to stay an action under § 3 than on a proceeding to compel arbitration under § 4. When a defendant asks for a stay under § 3, he is not seeking specific performance (i. e., an order requiring that the parties proceed to arbitration), but merely a stay of a kind long familiar in common law and in equity actions. Section 3 broadly commands that if "satisfied that the issue involved in such suit * * * is referrable to arbitration," the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement * * *." "There is * * * strong reason for construing the clause as permitting the federal court to order a stay even when it cannot compel the arbitration."[5] The power to grant such a stay under § 3 is in no way conditioned upon the existence of power to compel arbitration in accordance with § 4 of the Act.[6]

Applying these principles in Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942), our court of appeals held that a stay should have been granted even though the party seeking the stay contested the very existence of the charter party which contained the arbitration agreement, but, like Mosaic here, pleaded alternatively that if it did exist, then there should be a stay pending arbitration of the appropriate issue. Mosaic takes the same stance as did the applicant for a stay in *Kulukun-*

*dis,* and, we think, is entitled to the same result. As in *Kulukundis,* arbitration under the contracts here was a condition precedent to enforcing the contracts against the defendants to this action. At common law, performance of that condition precedent, unless excused, is the basis of a plea in bar. Section 3 now permits it to be made the basis of a stay.

■ Surely, plaintiffs cannot claim that Mosaic is a party to the first contract to enforce it against Mosaic in this action and be heard to deny that it is such a party for purposes of avoiding arbitration of claims clearly within the ambit of the arbitration agreement. In short, the plaintiffs cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage. To permit them to do so would not only flout equity, it would do violence, we think, to the congressional purpose underlying the Federal Arbitration Act. "Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it becomes disadvantageous to him."[7]

■■ If, as plaintiffs allege, defendant Mosaic, although not named as a party to the contract, is in fact a party to the contract, then, by virtue of the arbitration provision, Mosaic is entitled to a stay of these proceedings under § 3. If plaintiffs wish to enforce the contract against Mosaic, they must seek arbitration. If Mosaic rejects their demand for

**4.** Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, provides in pertinent part: "If the making of the arbitration agreement * * * be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default * * * the court shall hear and determine the issue. Where such an issue is raised, the party alleged to be in default may * * * demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose."

**5.** Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 453, 55 S.Ct. 313, 79 L.Ed. 583 (1935).

**6.** Shanferoke Coal & Supply Corp. v. Westchester Service Corp., supra, at 452, 55 S.Ct. 313; Kulukundis Shipping Co. v. Amtorg Trading Corp., supra, 126 F.2d at 986.

**7.** 68th Cong., 1st Sess., H.R.Rep. No. 96.

arbitration, plaintiffs are then entitled to seek to compel arbitration under § 4 of the Act. In that event, it will be appropriate to litigate and hear the then ripe issue of whether Mosaic and Tepper were parties to the contracts, but that issue, now premature, at best, cannot and should not, because of its time-consuming complexity, be litigated on these motions under § 3. Section 3 makes no provision for preliminary trials of issues which have been, or may be, raised in an answer but commands a stay if the claim asserted in the complaint is one which is subject to the arbitration agreement.[8] There can be no question that on its face the claim alleged here is subject to, and within the ambit of, the arbitration agreement. That is enough to satisfy the requirements for a stay under § 3. This result accords with the policy of § 6 which is to expedite by ordinary motion practice judicial treatment of matters pertaining to arbitration.[9] Such a policy would hardly be advanced by affording a preliminary trial, whether with or without a jury, on the premature and complex factual issues of whether Mosaic and Tepper are parties to the contracts.[10]

Finally, plaintiffs contend that the "cause of action" sounding in negligence is unaffected by the arbitration provision if Tepper's is not a party to the contracts. The argument is specious. Tepper cannot deny that it is a party to the contracts on these motions, and whether or not it is a party to the contracts, the negligence claim should be stayed, if not under § 3, then certainly under our general equity powers,[11] pending arbitration of the dispute between the parties because the negligence claim is grounded on allegations of misfeasance by defendants in the performance of their contracts. The fundamental purpose of the Federal Arbitration Act is to relieve the parties from costly litigation and help ease congested court dockets.[12] That purpose would be thwarted if plaintiffs can escape arbitration by fragmenting a single claim into two "causes of action" predicated on different legal theories.[13] In any event, there can be no question that Building Products, Tepper Realty, and Sparks were parties to the contracts. Building Products is therefore clearly entitled to a stay under § 3. According to the complaint, whatever rights Tepper's may have under the contracts depend on the agency of Tepper Realty, and whatever liabilities may rest on Mosaic hang on an alter ego relationship with Building Products. These facts alone, we think, call for a stay of the entire action pending arbitration, either under § 3 or our general equity powers to control our dockets to relieve this congested court from what may turn out to be an unnecessary law suit.

Accordingly, the motions are granted in all respects. The orders to be settled hereon shall contain a provision that the plaintiffs may move to vacate the stay at any time, if they seek arbitration, including, if necessary, initiation of proceedings under § 4, and it appears that the Mosaic defendants are in default in proceeding to arbitration.[14]

Settle orders on notice within ten (10) days.

---

8. Donahue v. Susquehanna Collieries Co., 138 F.2d 3, 4, 149 A.L.R. 271 (3d Cir. 1943).

9. Section 6 of the Federal Arbitration Act, 9 U.S.C. § 6, provides:
   "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."

10. Cf. World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir. 1965).

11. Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co., 339 F.2d 440 (2d Cir. 1964).

12. Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959).

13. See Rule 8(a), Fed.R.Civ.P. Cf. Dioguardi v. Durning, 139 F.2d 774, 775 (2d Cir. 1944); Siegelman v. Cunard White Star Limited, 221 F.2d 189, 196 (2d Cir. 1955).

14. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 70 F.2d 297, 299 (2d Cir. 1934).