**NETHERLANDS CURACAO CO., N.V.,**
**Plaintiff,**

v.

**KENTON CORPORATION, Defendant.**

**No. 73 Civ. 3521.**

United States District Court,
S. D. New York.

Nov. 12, 1973.

Bergreen & Bergreen, New York City, for plaintiff; David Brady, Martin

Blackman, Carl Golden, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant; Donald P. Wefer, Bernhardt K. Wruble, Paul G. Wallach, New York City, of counsel.

GURFEIN, District Judge:

The defendant, Kenton Corporation ("Kenton"), has applied for an order pursuant to 9 U.S.C. §§ 3 and 6 and Fed.R.Civ.P. 12(b), directing that this action be stayed or dismissed in view of a pending arbitration. The plaintiff moves for a stay of the arbitration. This action, based on diversity jurisdiction, is to recover on four promissory notes made by the defendant in the aggregate amount of $1,340,000. The plaintiff, Netherlands Curacao, N.V. ("Netherlands") is the assignee of the notes with the consent of Kenton. The notes were given pursuant to a series of related transactions between Kenton, on the one hand, and Etablissement Rulodes of Lichtenstein ("Rulodes"), and related parties.[1]

Pursuant to a series of interrelated agreements, all dated as of November 10, 1969, Kenton acquired certain worldwide assets, good will and the trade name "Valentino" associated with the high fashion couturier enterprise of one Valentine Garavani and his business associate, Giancarlo Giammetti, both Italian nationals. In a purchase agreement, Kenton acquired from Rulodes all the stock of another corporation, "Itel," which held certain Valentino assets. In addition to the purchase agreement referred to, there were also agreements under which: a) Kenton acquired from Rulodes all the stock of V.B. Creations, Inc. ("V.B.") whose assets consisted of the right to use the Valentino trademarks and good will in the United States.[2] b) A Kenton subsidiary acquired from Rulodes certain "perfume rights" in two agreements. c) Gara-

vani and his partner agreed to transfer to Kenton certain "Italian assets" —Garavani's sole proprietorship. d) Garavani and his partner gave certain warranties relating to the sale of V.B. e) They gave certain warranties relating to the sale of Itel.

In addition, there was a "Purchase Option and Escrow Agreement" among Kenton, Garavani and the United States Corporation Company as Escrow Agent, to which further reference will be made. There was also an "Umbrella Agreement" to which further reference will be made.

Before this action was begun, Kenton failed to pay a note for $558,333 payable on July 15, 1973. On July 31, 1973, Kenton requested arbitration before the International Chamber of Commerce. In its request, Kenton sought rescission of the agreements, return of amounts heretofore paid pursuant to the agreements and cancellation of the promissory notes. It based its right to arbitrate upon an arbitration clause contained in the Purchase Agreement reading as follows:

"*Arbitration.* All disputes arising in connection with the present contract shall be finally settled by arbitration. The arbitration shall be held at Paris, France, and conducted by three arbitrators in accordance with the Rules of the International Chamber of Commerce. Judgment upon the award rendered may be entered in any court having jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of enforcement, as the case may be. Such arbitrators are expressly authorized to render an award in the nature of injunctive relief in addition to any other appropriate remedy."

The plaintiffs have refused to arbitrate. Instead they started this action. Kenton cannot move to compel ar-

---

1. They are actually reissue notes dated June, 1971 of notes originally made as of Nov. 10, 1969.

2. The notes given for this transaction have been paid and are not in suit.

bitration because the place for the arbitration is not in this district. 9 U.S.C. § 4. See Lawn v. Franklin, 328 F.Supp. 791, 793 (S.D.N.Y.1971); China Union Lines, Ltd. v. Steamship Co. of 1949, Inc., 136 F.Supp. 597 (S.D.N.Y.1955); International Refugee Org. v. Republic S. S. Corp., 93 F.Supp. 798, appeal dismissed, 189 F.2d 858 (4 Cir. 1951). It moves to stay the action pending the outcome of the arbitration which it believes would resolve the matter. The court has power to grant a stay. See Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 453, 55 S.Ct. 313, 79 L.Ed. 583 (1935). The plaintiff contends that the issue is not arbitrable under the agreements.

Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 reads:

"§ 3. *Stay of proceedings where issue therein referable to arbitration.*

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

█ A federal court under Section 3 may consider only whether there was an agreement to arbitrate and its scope. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The question is, in the language of the statute, whether the court is satisfied "that the issue involved in such suit or proceeding is referable to arbitration."

The issue involved in this action is whether there was a failure to pay the notes, which is conceded, and whether Kenton had the right to refuse payment because of breach of warranty or otherwise. We must, therefore, look to the agreements to see whether there is any provision for arbitration in the precise circumstances of the action, namely, a failure to pay a note on the basis of a claim that the maker is not obligated to pay.[3]

There is such a provision in paragraph 7 of the Purchase Option and Escrow Agreement. I shall quote it in full:

"7. *Payment into Escrow of Disputed Note Obligations.* If at any time Kenton believes that the maker of any Note is not obligated to pay any sum of principal thereof or interest thereon, and if Kenton shall take the following actions, any failure to make such payment to the holder of such Note shall not constitute a default, notwithstanding anything herein to the contrary:

(a) Notify Garavani in writing, on or before the date on which such payment is due, that it does not believe that the maker of such Note is obligated to pay such sum and that it wishes to submit the matter to arbitration;

(b) Cause the sum referred to in clause (a) above to be paid to the Escrow Agent at the expiration of the 10 day period referred to in clause (c) below, unless Garavani shall have given notice to Kenton pursuant to such clause (c);

(c) Unless Garavani shall have notified Kenton in writing within 10 days of the notice provided for in clause (a) above that the holder of such Note intends to enforce payment thereof by legal proceedings or actions rather than through arbi-

---

3. The assignee of a non-negotiable note given pursuant to an agreement which contains an arbitration clause may be bound by the clause. See Hosiery Manufacturers Corp. v. Goldston, 238 N.Y. 22, 143 N.E. 779 (1924). And see Fisser v. International Bank, 282 F.2d 231, 233, and n. 6 (2 Cir. 1960).

tration, submit such matter to arbitration within 20 days after the notice provided for in clause (a) above. If Garavani shall have given such notice to Kenton within such 10 day period, nothing herein shall in any respect affect the right of the holder of such Note to enforce payment thereof through any legal proceedings or actions, and Kenton shall not have the right to submit the matter to arbitration.

Any arbitration pursuant to this paragraph 7 shall be held in Paris, France and conducted by three arbitrators in accordance with the Rules of the International Chamber of Commerce. The Escrow Agent will hold such sum in escrow pending receipt by it of Written Instructions given by Kenton and Garavani as to the disposition thereof, the terms of which it will then carry out. Kenton and Garavani will promptly give the Escrow Agent Written Instructions in accordance with any arbitration award resulting from such arbitration or in accordance with any final judgment resulting from such legal proceeding or action, as the case may be."

Kenton, however, points to the "Umbrella Agreement" which refers to the group of agreements being executed, including the Purchase Option and Escrow Agreement which provides that "it is agreed that any matter which might give rise to the right in the other party to cause any such agreements to be rescinded, will generate the right in such party to rescind all agreements referred to herein." The "Umbrella Agreement" contains an arbitration clause which is in the ·exact words of the arbitration clause of the Purchase Agreement quoted above.

We are thus faced with two provisions which on their face are hard to reconcile. In its request for arbitration, Kenton has taken the position that the maker has no obligation to pay the note. Under Paragraph 7 of the Purchase Option and Escrow Agreement, it has therefore specifically waived arbitration

since certain steps required thereunder to preserve that right have not been taken. The ultimate facts are 1) that Kenton failed to notify Garavani that the maker had no obligation to pay the note and wished to submit the matter to arbitration; and 2) that it failed to pay the amount of the note into escrow. The holder of the note has also notified Kenton that it "intends to enforce payment thereof by legal proceedings rather than through arbitration." Paragraph 7 of Purchase Option and Escrow Agreement.

The election provided for was to be by the noteholder, not by Garavani to whom the option to repurchase was given. This means that the noteholder has the right to enforce payment by legal proceedings and that it is a right *additional* to the right of Garavani to exercise his option.

That would be clearly dispositive in the plaintiff's favor but for the arbitration clause in the "Umbrella Agreement." There the parties provided that the right to rescind the agreement carries with it the right to rescind all the agreements. Kenton contends that it has the right to rescind the purchase agreement. If it has that right (which goes to the merits) then it may also rescind the Purchase Option and Escrow Agreement. If we read the provision literally, rescission of the Purchase Option and Escrow Agreement would also rescind its waiver of arbitration in paragraph 7, since it is a part of that agreement. And, it may be suggested, whether Kenton has the right to rescind an agreement on the merits is itself an issue subject to arbitration under the Umbrella Agreement.

■■ We thus come full circle if we apply the provisions literally. One provision purports to nullify the other. To derive the intention of the parties from the contradiction is not an easy task. I think the problem must be approached from the assumption that a particular clause was not intended to be nullified by a general clause. See Madison 52nd

Corp. v. Empire Trust Co., 12 A.D.2d 600, 208 N.Y.S.2d 466 (1960), aff'd, 10 N.Y.2d 873, 223 N.Y.S.2d 503, 179 N.E. 2d 508 (1961); Muzak Corp. v. Hotel Taft Corp., 1 N.Y.2d 42, 46, 150 N.Y.S. 2d 171, 133 N.E.2d 688 (1956). Otherwise, the nullified clause would have been written in water.

Since a failure to pay the note permits the holder to accelerate and sue unless Kenton puts into escrow the amount due, a specific right was given to the noteholder in relation to which Kenton waived arbitration. That waiver is not ambiguous, nor does it arise only by implication. The language is: "and Kenton shall not have the right to submit the matter to arbitration."

We must, therefore, see whether the arbitration clause in the "Umbrella Agreement" continues to have some meaning in the light of such a construction. 1 Restatement, Contracts § 235c; Muzak Corp. v. Hotel Taft Corp., supra. That turns on whether there are discrete arbitrable issues remaining after the notes had been issued. This requires an analysis of the terms of the "Umbrella Agreement."

Among its provisions were the following: 1) Kenton agreed that so long as the enterprise remains viable it would provide it with such adequate amounts of working capital as may be reasonably required. 2) Kenton agreed that it would make payments required to be made to Garavani and Giammetti at those locations which they elect in writing to the extent permitted by law. 3) If the working capital on November 10, 1969 of the Italian Branch of the N.V. is less than $300,000, as determined in accordance with the Italian Assets Agreement, Kenton may offset the deficiency against obligations to Rulodes and the two individuals. 4) The failure of Garavani and Giammetti to comply with Clause (ii) of Section 2.8 of the

Agreement Relating to Italian Assets in relation to leases will result in liquidated damages of $100,000.[4] 5) Garavani and Giammetti would not have the right to renew their compensation arrangements with N.V. or their Technical Assistance and Non-Compete Agreements with Kenton and with V.B. unless they renewed all three agreements concurrently. There is a correlative requirement of concurrent renewals by Kenton, N.V. and V.B.

The arbitration clause then commences as follows: "All disputes arising in connection with the present contract shall be finally settled by arbitration." I find that the provisions of the "Umbrella Agreement" create enough potential issues which could be arbitrated, so that the arbitration clause has meaning without stretching it to include the issue here in suit, arising from the claim that the maker has no obligation to pay the note.

The failure of Kenton to give the notice required and to make the escrow payment required, triggered the waiver of arbitration under paragraph 7 of the Purchase Option and Escrow Agreement.[5]

Accordingly, the motion to stay this action is denied.

To avoid conflict with the ultimate decision of this Court, the arbitration will be stayed pending the outcome of this action. See Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div., 315 F.2d 538 (4th Cir. 1963). Irreparable injury to the plaintiff may result if the processes of this Court are not permitted to determine the controversy, particularly since the comity normally afforded the judgments of this Court in foreign jurisdictions may be adversely affected by a possibly inconsistent arbitration award.

An appropriate order should be submitted on five days notice.

---

4. This provision relates to inability to procure assignment of leases.

5. Kenton's argument that the Purchase Option and Escrow Agreement relates only to the option and not to default on the notes is without merit. The language clearly gives rights to the noteholder who need not be Garavani.