**CHINA UNION LINES Limited et al., Plaintiffs,**

v.

**AMERICAN MARINE UNDERWRITERS, INC., and Calvert Fire Insurance Co., Defendants and Third-Party Plaintiffs.**

**CANADIAN MARINE UNDERWRITERS Limited and CNA Assurance Co., Inc., Defendants,**

v.

**I. R. POSGATE et al., Third-Party Defendants.**

No. 76 Civ. 3052 (VLB).

United States District Court,
S. D. New York.

Oct. 5, 1978.

Hughes, Hubbard & Reed, New York City, for plaintiffs.

Bigham, Englar Jones & Houston, New York City, for defendants.

Mendes & Mount, New York City, for third party defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

Third-party defendants, I. R. Posgate and other underwriters at Lloyds subscribing to Reinsurance Contract "GLH No. 1039–61" (collectively, "Posgate"), have moved to stay the proceedings under the third-party complaint herein pending arbitration in Miami. The motion is made pursuant to 9 U.S.C. § 3.[1]

The facts relevant to the instant motion can be stated briefly. The principal action is a suit on marine insurance policies by plaintiffs, China Union and International Union Maritime Insurance Company, against defendants, American Marine Underwriters, Inc., Calvert Fire Insurance Co., Canadian Marine Underwriters Limited, and CNA Assurance Co., Inc. Defendants have rejected plaintiffs' claim, chiefly on the alleged grounds that the insurance policy was void *ab initio* due to misrepresentation of facts that were material to the underwriting of the risks involved.

Defendants American Marine Underwriters, Inc. and Calvert Fire Insurance Company (collectively, "AMU") have impleaded Posgate, the third-party defendant, on the grounds that, if AMU is held liable to plaintiffs in the principal action, then AMU is entitled to partial indemnity from Posgate.[2] AMU base their third-party action on a Treaty of Reinsurance ("the Treaty"). The Treaty provides that Posgate will cover the total loss risks of AMU to a maximum of $500,000 per vessel.

The Treaty contains two clauses that are pertinent to the disposition of the instant motion. Article XII is entitled "Arbitration" and reads in part as follows:

1. If any dispute shall arise between AMU and the reinsurer, either before or after the termination of this contract, with reference to the interpretation of this contract or the rights of either party with respect to any transaction under this contract, the dispute shall be referred to

1. 9 U.S.C. § 3 (1976) reads as follows:

   § 3. Stay of proceedings where issue therein referable to arbitration

   If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on applica- tion of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

2. No extended discussion of the subject matter jurisdiction of this court is necessary. The third-party complaint alleges facts that serve as sufficient bases for diversity jurisdiction, 28 U.S.C. § 1332 (1978 Cum.Supp.) and admiralty jurisdiction, 28 U.S.C. § 1333 (1966).

three arbitrators, . . . The arbitrators shall consider this contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both AMU and the reinsurer. The expense of the arbitrators and of the arbitration shall be equally divided between AMU and the reinsurer. Any such arbitration shall take place in Miami, Florida unless some other location is mutually agreed upon by the parties.

Article XV of the Treaty is entitled "Service of Suit Clause" and reads in part as follows:

1. It is agreed that in the event of the failure of the reinsurer to pay any amount claimed to be due hereunder, the reinsurer, at the request of the reinsured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court.

\* \* \* \* \* \*

AMU based the impleader of Posgate on the provision of the Service of Suit Clause, Article XV. Posgate bases the motion for a stay of the third-party action on the Arbitration Clause, Article XII.

## II.

I conclude that Posgate is entitled to a stay of the third-party action, such stay to be effective pending arbitration pursuant to Article XII of the Treaty between Posgate and AMU.

**3.** 9 U.S.C. § 2 (1976) reads as follows:

§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a

## III.

Posgate's main contentions are (1) that the Treaty is a policy of marine insurance and, as such, is a maritime contract within the meaning of 9 U.S.C. § 2,[3] and (2) that, therefore, under 9 U.S.C. § 3,[4] the third-party action should be stayed pending arbitration.

■ If the Treaty contained only Article XII and not Article XV, Posgate's contentions could be accepted without question, for it is settled that if "on its face the claim alleged . . . is subject to and within the ambit of, the arbitration agreement[,] [t]hat is enough to satisfy the requirement for a stay under § 3." *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 693 (S.D. N.Y.1966). However, the Treaty also contains Article XV, the Service of Suit Clause.

Posgate argues, *inter alia,* that there is in fact no inconsistency between Article XII and Article XV at this stage of the litigation because, by its own terms, Article XV has not yet even come into play. Article XV requires Posgate to submit to jurisdiction only "in the event of the failure of the reinsurer [Posgate] to pay any amount claimed to be due hereunder;" Posgate notes that no amount is yet "claimed to be due," and contends that any obligations it may have under Article XV have not yet arisen. Posgate also argues that the case law, in particular *Hart v. Orion Insurance Co.,* 453 F.2d 1358 (10th Cir. 1971), establishes that there is no irreconcilable conflict between Articles XII and XV and that Article XV does not constitute a waiver of the arbitration agreement stated in Article XII.[5] Finally, Posgate argues that the stay

contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

**4.** See note 1, *supra.*

**5.** The key language in *Hart,* according to Posgate, is this: "The assent of the insurer to jurisdiction does not prevent it from raising a defense [namely, arbitration] based on policy terms." *Hart,* 453 F.2d at 1361.

should be granted because even though Posgate did not raise the defense of arbitration in its answer, AMU will suffer no prejudice if a stay is granted.

AMU argues, *inter alia,* that Article XII and Article XV are inconsistent and that, read together, the two Articles give AMU, the reinsured, the option to arbitrate or to litigate disputes. AMU also argues that the presence of both Article XV and Article XII in the Treaty renders the parties' intent concerning arbitration unclear and thereby precludes the grant of a stay. Finally, AMU argues that Article XV constitutes a waiver of the Article XII arbitration right in the sense that, if AMU exercises its Article XV rights to litigate, Posgate may be deemed to have waived its Article XII rights to arbitrate.[6]

### IV.

9 U.S.C. § 3 states in pertinent part that when the court is "satisfied that the issue involved . . . is referable to arbitration[, the court] *shall on the application of one of the parties stay the trial of the action until such arbitration has been had . . ..*" (emphasis added). The case law interpreting this language makes clear that the language is to be read literally. Thus so long as (1) there is an agreement to arbitrate and (2) at least one of the issues involved in the suit is within the scope of the arbitration agreement, a stay is to be granted as a matter of course, except in rare cases. *See Kulukundis Shipping Co. v. Amtort Trading Corp.,* 126 F.2d 978, 986–88 (2d Cir. 1942) (stay under Section 3 granted more readily than specific performance under Section 4 [7]); *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 691–92 (S.D.N.Y.1966).

Article XII constitutes an arbitration agreement, and the issue regarding the indemnification of AMU by Posgate is within the scope of that agreement. Thus a stay should be granted as a matter of course unless it can be shown that this case involves unusual circumstances that give rise to a "waiver" of Posgate's Article XII arbitration right.

---

**6.** As support for this argument, AMU relies on *Netherlands Curacao Co., N. V. v. Kenton Corp.,* 366 F.Supp. 744 (S.D.N.Y.1973), discussed in footnote 10.

**7.** 9 U.S.C. Section 4 (1976) reads as follows:
§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

With respect to whether or not a waiver has occurred, under the "overriding federal policy honoring arbitration[,] [w]aiver . . . is not to be lightly inferred . . . ." *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir. 1968). *Accord, Hart v. Orion Insurance Co.,* 453 F.2d 1358, 1360 (10th Cir. 1971). Moreover, it is "the presence or absence of prejudice [to the non-moving party] which is determinative of the issue." *Carcich, supra,* 389 F.2d at 696.

In determining whether the Treaty itself contains a waiver of Posgate's arbitration rights, the Treaty must be read as a whole. For present purposes, this means that Article XII and XV must be read together since the parties assented to the provisions of both articles. *See Tepper,* 259 F.Supp. at 690 (question in Section 3 cases is whether the parties manifested a mutual intent to arbitrate).

Article XII and Article XV are not inconsistent because, at this stage in the litigation, Article XV has not yet been triggered. Here I distinguish between a failure by Posgate to pay an amount claimed to be due under the Treaty (which would bring Article XV into play) and a denial of an obligation of indemnification under the Treaty (which would not). In order for Article XV to come into play, Posgate must have failed to pay an amount claimed to be due under the Treaty. But Posgate has not yet done that. Instead, Posgate has merely denied that it had an obligation under the Treaty to indemnify AMU.[8]

Since Posgate has not yet committed an act that brings into play Article XV,[9] Article XV is not presently applicable. It cannot be construed to constitute a *pro tanto* waiver of Article XII.[10] Absent waiver in the course of this litigation, Posgate retains its Article XII right to arbitrate.

Posgate's conduct in this litigation also does not give rise to a waiver. Posgate did omit to assert the affirmative defense of arbitration in its answer, and Posgate also waited a long while after it was impleaded before it filed this motion for a stay under Section 3.[11] However, in the absence of prejudice to AMU, neither the failure to plead arbitration nor the delay in filing the instant motion is sufficient to constitute a waiver of Posgate's arbitration rights. *Carcich,* 389 F.2d at 696. Indeed, to paraphrase the Court in *Carcich,* I "perceive no claim by [AMU] that [it] would have proceeded differently in the total litigation had a stay been requested earlier. Nor can it be asserted that [Posgate] has taken unfair advantage of discovery proceedings which would not have been available to it in arbitration. . . . " *Id.*[12] Thus AMU has suffered no prejudice.[13]

SO ORDERED.

8. *See* Third-Party Complaint, ¶¶ 6, 7, and 9; Third-Party Answer, ¶¶ 6, 7, and 9.

9. In view of the disposition of the instant motion, I need not decide whether the impleader of Posgate by AMU was premature. All that is decided herein is that Article XV and Article XII are not, at this stage of litigation, inconsistent. This is merely a matter of contract interpretation. Thus, the effect of Rule 14, Fed.R. Civ.P., need not be considered here.

10. The main case cited by AMU in support of its contention that there was a waiver, *Netherlands Curacao Co., N.V. v. Kenton Corporation,* 366 F.Supp. 744 (S.D.N.Y.1973), does not militate against this conclusion. That case is distinguishable from the instant case because the clause at issue therein, unlike Article XV herein, was an explicit waiver clause with respect to a specific right. Indeed, the court said: "That waiver is not ambiguous, nor does it arise only by implication. The language is: 'and [under certain circumstances] Kenton shall not have the right to submit the matter to arbitration.'" 366 F.Supp. at 748.

11. Although the third-party complaint against Posgate was filed on September 1, 1976, Posgate did not file the instant motion until May 31, 1978.

12. Posgate filed several notices of deposition on October 22, 1976, but the depositions were never taken.

13. The result reached herein is similar to that reached in *Hart v. Orion Insurance Co.,* 453 F.2d 1358, 1360 (10th Cir. 1971), wherein the court held that a party's consent to jurisdiction is not inconsistent with the party's raising the defense of arbitration.