**ATLANTIC SHORES RESORT JOINT VENTURE, Claimant,**

v.

**Richard E. MARTIN, A.I.A. and Associates and The Martin Organization, Respondents.**

**Civ. A. No. M90-2-13-H.**

United States District Court,
D. South Carolina,
Florence Division.

March 2, 1990.

Arbitration award confirmed; judgment for respondents.

J. Richard Kelly, Leatherwood, Walker, Todd & Mann, Greenville, S.C., for claimant.

Lawrence B. Orr, Bridges and Orr, Florence, S.C., for respondents.

## ORDER

HAMILTON, District Judge.

Respondents, Richard E. Martin, A.I.A. and Associates and The Martin Organization (Martin), move the court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, for confirmation of an arbitration award entered in their favor and against claimant, Atlantic Shores Resort Joint Venture (Atlantic Shores), in the amount of Sixty–Three Thousand Two Hundred Ninety–Four and No/100 ($63,294.00) Dollars. Claimant Atlantic Shores counterclaims on grounds that the arbitration award should be vacated and requests that respondents' petition to confirm be stayed pending a determination of claimant's alleged entitlement to relief. Jurisdiction is premised upon 28 U.S.C. § 1332. The court has concluded that respondents' motion to confirm should be granted.

On January 17, 1985, Atlantic Shores and Martin entered into a contract whereby Martin agreed to perform certain architectural services in connection with the design and construction of the Sheraton Atlantic Shores Hotel (hotel) in Myrtle Beach, South Carolina. The contract provided that all disputes between the contracting parties arising out of their agreement would be decided by arbitration. According to Article 9 of the contract:

> All claims, disputes and other matters in question between the parties to this Agreement, arising out of or relating to this Agreement or the breach thereof, will be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, unless the parties mutually agree otherwise....

The contract also provided that "[t]he award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law...." Article 9, § 3.

Atlantic Shores also entered into a contract with Metric Constructors, Inc. (Met-

ric) whereby Metric agreed to serve as general contractor on the project. The hotel was first occupied in March 1987. Apparently at the end of the first summer of occupancy, mold and mildew were noted in guest rooms. Leaks were also discovered in numerous places throughout the hotel. Atlantic Shores retained the services of Simpson, Gumpertz and Heger, Inc. to investigate the problems. In addition to forming an opinion as to the leaks, Simpson, Gumpertz and Heger, and other consultants retained by Atlantic Shores, reached the opinion that the mold and mildew were principally caused by the design of the heating, ventilation, and air conditioning (HVAC) system. It was Martin's opinion, however, that the mold and mildew was caused by moisture which entered the building during construction, external leaks in the building, and the method by which hotel personnel operated the HVAC system.

Atlantic Shores filed arbitration against Metric and Martin in August 1988 and January 1989, respectively. Both arbitration proceedings were filed with the American Arbitration Association (Association). Although Atlantic Shores requested consolidation, under the provisions of the arbitration clause consolidation could not be required without the consent of all parties— and Martin objected. The Association did not consolidate the proceedings, and Atlantic Shores then requested that the arbitration with Martin be heard first. Martin objected on grounds that the problems Atlantic Shores complained of were construction problems, and thus that relief should first be obtained from Metric. Nevertheless, Atlantic Shores insisted upon proceeding with the arbitration against Martin first. After extensive evidentiary hearings held September 11–14, 1989, October 15–18, 1989, and November 6–9, 1989, the parties were afforded the opportunity to submit written briefs and conduct oral argument on December 7, 1989. The arbitration pan-

el issued an award on December 21, 1989, in which it found Atlantic Shores was not entitled to recover from Martin, but that Martin was entitled to recover Sixty–Three Thousand Two Hundred Ninety–Four and No/100 ($63,294.00) Dollars on its counterclaim for architectural fees.

Martin has petitioned this court to confirm the arbitration award entered on December 21, 1989. Atlantic Shores, however, has moved this court to stay confirmation of the award, and has also moved to vacate the award. Atlantic Shores argues that the award should be vacated on grounds that the arbitrators allegedly acted with evident partiality; exceeded their power under the agreement and applicable rules, refused to hear material evidence; refused to grant relief where liability was admitted; and acted in a manner that constitutes a manifest disregard of the law.

The Federal Arbitration Act (Act), 9 U.S.C. §§ 1–14, evidences the well established federal policy favoring the arbitration of disputes. *See, e.g., Corbin v. Washington Fire and Marine Ins. Co.,* 278 F.Supp. 393 (D.S.C.), *aff'd,* 398 F.2d 543 (4th Cir.1968). Indeed, "[a] confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act." *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986). Significantly, "the showing required to avoid summary confirmation is high." *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987).

To advance the underlying purposes of arbitration,[1] the scope of federal judicial review is necessarily restricted. Specifically, the court may only vacate an arbitration award on "one of the grounds specified by 9 U.S.C. § 10 . . . ." *Nat'l R.R. Passenger Corp. v. Chesapeake and Ohio Ry. Co.,* 551 F.2d 136, 142 (7th Cir.1977), or, presumably, where the arbitrator acted in manifest disregard of the law or the award

---

1. Of course, the federal policy in favor of arbitration is premised upon the goal of providing "a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Dia-*

*pulse Corp. of America v. Carba Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980). Arbitration has also been recognized as serving to "ease congested court dockets." *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 693 (S.D.N.Y.1966).

is incomplete, ambiguous, or contradictory. *See, e.g., Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.,* 659 F.Supp. 1346, 1351 (S.D.N.Y.1987), *aff'd,* 841 F.2d 1117 (2d Cir.1988).[2] Perhaps most important, the burden of proof falls squarely on the party moving to vacate the arbitration award, *see Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 700 (2d Cir.1978), who must "establish *substantially more* than an erroneous conclusion of law or fact." *Local Union No. 251 v. Narragansett Improvement Co.,* 503 F.2d 309, 312 (1st Cir.1974) (emphasis added).

Section 10 of the Act expressly limits a federal court's power to vacate an arbitration award to the following four situations:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"These statutory grounds for vacating an award must be read in the light of the rule that the Court's function in vacating or confirming an arbitration award is 'severely limited.'" *Newark Stereotypers' Union v. Newark Morning Ledger Co.,* 261 F.Supp. 832, 835 (D.N.J.1966), *aff'd,* 397 F.2d 594 (3d Cir.), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968) (quoting *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir.), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960)).

Atlantic Shores first presses for vacation of the award on grounds of evident partiality. Specifically, Atlantic Shores asserts that evident partiality is demonstrated because the arbitration panel allegedly intentionally delayed issuing its decision until a decision had been issued by a separate panel in the Metric arbitration. Atlantic Shores contends that if the award had been issued sooner, before testimony in the Metric arbitration had been concluded, it could have changed its theory of causation and presented different expert testimony to the Metric arbitration panel. Atlantic Shores also asserts that evident partiality is shown because one of the panel members in the Martin arbitration allegedly possessed a negative opinion of Metric.

In response, Martin argues that the mere fact one panel member may have had a negative opinion toward Metric does not show evident partiality for or against either Atlantic Shores or Martin. Martin also contends that the panel's mere issuance of a decision well within the thirty day deadline imposed by Rule 41 of the Construction Industry Arbitration Rules of the American Arbitration Association (Arbitration Rules) does not establish evident partiality. Specifically, Martin submits that the panel issued its decision on December 21, 1989, within fourteen (14) days of the close of the hearings on December 7, 1989. Martin also argues that Atlantic Shores could have averted its alleged difficulties in presenting its case to two different panels by requesting a delay in the Metric arbitration or by requesting that the Metric hearings be held open pending receipt of the Martin award. In conclusion, Martin submits that Atlantic Shores' decision to proceed against Martin and follow that arbitration so quickly with arbitration against Metric does not establish evident partiality on the part of the arbitrators.

▆ To overturn an award on grounds of evident partiality, the moving party must demonstrate more than an appearance of impropriety. *Sheet Metal Workers Int'l*

---

**2.** The Act also provides for *modification* of an award in certain statutorily specified instances.

*See* 9 U.S.C. § 11.

*Ass'n v. Kinney Air Conditioning Co.,* 756 F.2d 742, 746 (9th Cir.1985) (Kennedy, J.); *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173–74 (2d Cir.1984). Specifically, "[t]he party alleging evident partiality must establish specific facts which indicate improper motives on the part of the Board," *Sheet Metal Workers,* 756 F.2d at 746, *accord Toyota of Berkeley v. Local 1095,* 834 F.2d 751, 755 (9th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988), and which establish that the "arbitrator's conduct was so biased and prejudiced as to destroy fundamental fairness." *Amerada Hess Corp. v. Local 22026,* 385 F.Supp. 279, 281 (D.N.J. 1974) (and cases cited therein).

■ The court has concluded that Atlantic Shores' evidence falls far short of establishing any improper motive on the part of the arbitration panel. Under Rule 41 of the Arbitration Rules, the panel had thirty (30) days in which to issue a decision. The arbitration hearings in this matter were completed on December 7, 1989, and an award was issued by the arbitration panel on December 21, 1989. The mere timely filing of the panel's decision in no way establishes any improper motivation on the part of the Board. Nonetheless, Atlantic Shores asserts that if the Board had issued its decision earlier, it could have somehow rethought its strategy for purposes of the Metric arbitration. But the arbitration panel was not responsible to accommodate every aspect of Atlantic Shores' arbitration strategy. Rather, they were accountable to issue an award within the time periods established by the Arbitration Rules. As stressed by Martin, Atlantic Shores apparently made no effort to request that the Metric arbitration be delayed, or, alternatively, that the Metric hearings be held open pending receipt of the Martin award. Indeed, the panel's promptness in issuing an award is commendable in light of the fundamental purposes underlying arbitra-

tion. *See Fairchild & Co., Inc. v. Richmond, Fredericksburg and Potomac R. Co.,* 516 F.Supp. 1305, 1313 (D.D.C.1981) ("since the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him."). Accordingly, Atlantic Shores' contention that the timing of the panel award evidences evident partiality must be rejected.[3]

■ Atlantic Shores' contention that alleged bias toward Metric by one of the Martin panel members somehow establishes evident partiality for purposes of arbitration between *Atlantic Shores and Martin* must likewise be rejected by the court. It is well settled, of course, that alleged bias on the part of an arbitrator cannot be the basis for vacating an award unless the interest or bias is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Sidarma Societa Italiana Di Armamento Spa, Venice v. Holt Marine Industries,* 515 F.Supp. 1302, 1307 (S.D.N.Y.), *aff'd,* 681 F.2d 802 (2d Cir.1981) (quoting *Tamari v. Bache Halsey Stuart Inc.,* 619 F.2d 1196, 1200 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980)). Assuming one of the panel members was in fact biased against Metric, it would nonetheless constitute a speculative leap in logic to automatically conclude that this evidence, standing alone, establishes favoritism in favor of Martin and against Atlantic Shores, and is arguably not even relevant to the evident partiality determination arising out of arbitration between Atlantic Shores and Martin. Accordingly, Atlantic Shores' evident partiality allegations must fail.

■ Atlantic Shores next asserts that the December 21, 1989, arbitration award must be vacated because Atlantic Shores was denied the opportunity to cross-examine Martin's expert witness, Heinz Trechsel, concerning his findings in another

---

**3.** Atlantic Shores asserts that it "is informed and believes that the panel of arbitrators in the Martin case met, reached their decision to deny Atlantic Shores' claim and then intentionally withheld their ruling until they were notified that the Metric proceedings had been closed."

Obviously, the court cannot premise vacation of an arbitration award upon mere "information and belief." Thus, this bare allegation by Atlantic Shores does not effect the court's disposition of this matter.

construction dispute. Had cross-examination been allowed, Atlantic Shores asserts, it would have shown that Trechsel's testimony was inconsistent with opinions given in analogous situations. Atlantic Shores thus contends that denial of the right to cross-examine evidences the panel's partiality, its refusal to receive relevant evidence, and its complete disregard of the law.

Martin asserts, however, that the panel correctly determined the attempted cross-examination was not relevant or material to the issue raised by Trechsel's testimony. Martin notes that the parties and the arbitration panel agreed to conduct the hearings in a bifurcated format, as follows: First, Atlantic Shores offered evidence on causation as to the mold and mildew, followed by Martin's defense in chief to mold and mildew causation; second, Atlantic Shores offered testimony on other damages issues, to which Martin offered its defense in chief; and third, Atlantic Shores offered reply testimony on mold and mildew causation, and Martin was then allowed limited rebuttal testimony. Martin argues that Atlantic Shores was allowed to cross-examine Trechsel during the first phase of the hearings. Transcript of Record, pp. 6–107 through 6–136 and 6–137 through 6–139. During the final stage of the proceedings, when Martin offered responsive testimony to the reply testimony offered by Atlantic Shores, Martin alleges that its proffer of testimony was restricted to countering new material brought out by Atlantic Shores in reply. Martin maintains that Trechsel was called and testified on a very limited issue of vapor migration in a wall cavity from a point of water leakage. During cross-examination of Trechsel, Martin asserts that Atlantic Shores attempted to question Trechsel about a report he had issued on a project in Florida as to the *cause* of mold and mildew in that case. Accordingly, Martin argues that the arbitration panel correctly ruled that this line of questioning was "too far afield" from the testimony on direct and was properly excluded. In support of its assertion, Martin notes that Rule 31 of the Arbitration Rules provides that the arbitrators shall be the judges of the relevance and materiality of evidence presented by the parties. Additionally, because Martin was restricted in the type of evidence in which it was allowed to present during this phase of the hearings, Martin argues that it was proper to exclude evidence which was not relevant to Trechsel's reply testimony.

Absent exceptional circumstances, a reviewing court may not overturn an arbitration award based on the arbitrator's determination as to the relevancy of evidence offered by the parties. *See, e.g., Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir.1985). Obviously, an arbitration award will not be set aside for the arbitrator's refusal to admit irrelevant evidence. *Grahams Service Inc. v. Teamsters Local 975*, 700 F.2d 420, 422–23 (8th Cir.1982). Indeed, vacation is normally inappropriate even where the excluded evidence is relevant. Put simply, the award should be vacated only where the exclusion of *relevant* evidence "so affects the rights of a party that it may be said that he [or she] was deprived of a fair hearing." *Hoteles Condado Beach*, 763 F.2d at 40 (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968)).

In the present case, Atlantic Shores was afforded the opportunity to cross-examine Trechsel during the phase involving mold and mildew causation. During the third phase of testimony, the scope of Trechsel's testimony was delineated as follows:

CHAIRMAN: Mr. Ficken [Martin attorney], what new material that's been brought in during their reply case will Mr. Trechsel's testimony be directed toward?

Mr. FICKEN: It will be directed to the observation by Mr. Cole of localized water infiltration at the incidence of the EIFS repair.

CHAIRMAN: OK.

Transcript of Record, pp. 10–15 through 10–16. After direct examination was limited to this narrow topic, counsel for Atlantic Shores attempted to question Trechsel about a prior opinion he had given about

mold and mildew causation on an entirely different project—a question which exceeded the scope of direct examination. The transcript reflects the following:

Q. One other general question. Have you ever done a report on a project where you determined that negative pressure in a building, where the building also had exterior leaks, that negative pressure was the predominant problem causing mold and mildew in the building?

Mr. FICKEN: Objection. Has nothing to do with my question.

Mr. KELLY: He's been allowed total latitude on cross.

CHAIRMAN: He's not been allowed total latitude on cross. He's been allowed wide latitude, as both parties have, on both direct and cross, et cetera.

. . . . .

CHAIRMAN: Mr. Kelly, I don't think any of this was—Does this relate to what he just talked about on direct?

MR. KELLY: He just gave an answer, saying he doesn't think so. I want to let him acknowledge this report and then tell me if [sic] wants to change his answer.

. . . . .

Mr. FICKEN: ... I would suggest that the document go back from whence it came and we not get into this. This does not relate to anything that I did on direct.

Mr. KELLY: The only point is that this gentleman has concluded in another case, very similar to this, where there were building leaks and negative pressure, that negative pressure was the predominate cause of mold and mildew.

Mr. FICKEN: Totally inappropriate.

Mr. DIGGES: In this particular case, I think it's totally inappropriate.

CHAIRMAN: I don't think we're going to get into this. It's too far afield.

Transcript of Record, pp. 10–19 through 10–20. Having already afforded Atlantic Shores the opportunity to cross-examine Trechsel on his opinion regarding the cause of the mold and mildew problems during an earlier phase of the hearings, it was clearly not improper for the panel to exclude evidence beyond the scope of Martin's direct examination during the reply and rebuttal phase of the hearings. Accordingly, Atlantic Shores' contention is without merit. *See Barker v. Government Employees Ins. Co.*, 339 F.Supp. 1064, 1067 (D.D.C. 1972) (technical evidentiary objections not valid basis for overturning arbitration award where arbitration is conducted in accordance with the appropriate arbitration rules because common law rules of evidence do not apply in arbitration proceedings); *Scott v. American Airlines, Inc.*, 488 F.Supp. 415 (S.D.N.Y.1980) (exclusion of material evidence not proper basis for vacatur where party did not avail itself of previous opportunity for cross-examination).

▪ Finally, Atlantic Shores contends that the arbitrators acted in manifest disregard of the law because Martin's principal fact witness, Carl Wester (the project architect), allegedly admitted during his testimony that he observed construction defects during construction of the hotel which he did not report to the general contractor or the owner. Martin asserts, however, that primary recourse for defects during construction is against the general contractor, Metric. Martin also alleges that the focus of questioning when Wester made this remark was the alleged omission of sheet metal in certain areas of the hotel. Thus, Martin contends that the arbitration panel could have determined that since the omission of sheet metal was a contractor problem, Atlantic Shores could not recover against Martin until it first demonstrated it could not recover from Metric.

▪ That the arbitrators erroneously decided the facts or erroneously applied the law does not ordinarily suffice to overturn an arbitration award. *Transit Casualty Co.*, 659 F.Supp. at 1355. Indeed, the arbitrator is not even required to state the factual basis or reason for a particular award. *Atlanta–Tomberlin, Inc. v. Eastern Band of Cherokee Indians*, 672 F.Supp. 887, 889 (W.D.N.C.1987). Presently, it is clear that it would be improper for this court to overturn the award on the

ground urged by Atlantic Shores. In short, the arbitration panel could have concluded that Atlantic Shores' only remedy was against Metric, or, alternatively, that Wester's general admission was not sufficiently probative of any alleged deficiencies at issue in the arbitration to justify an award of damages. In any event, it is clear that the arbitration panel's refusal to award Atlantic Shores damages premised solely upon the vague assertion by Wester that he observed construction defects that he failed to report does not establish manifest disregard for the law on the part of the panel—precisely because this evidence, standing alone, does not prove that the defects Wester allegedly observed were the cause of the mold and mildew problem.

Based on the foregoing reasoning and cited authorities, the court is constrained to grant respondents' motion to confirm the arbitration award. Accordingly, the court hereby confirms the arbitration award entered on December 21, 1989. 9 U.S.C. § 9. The clerk is hereby directed to enter judgment in favor of respondents, Richard E. Martin, A.I.A. and Associates and The Martin Organization, and against claimant, Atlantic Shores Resort Joint Venture, in the amount of Sixty–Three Thousand Two Hundred Ninety–Four and No/100 ($63,-294.00) Dollars. Atlantic Shores' motion to vacate the award and to stay confirmation is accordingly denied.[4]

IT IS SO ORDERED.

4. Immediately prior to the hearing scheduled in this matter, counsel for claimant telephoned the court and stated that Atlantic Shores had withdrawn its opposition to respondents' motion to confirm the arbitration award.