**PETROLEUM HELICOPTERS, INC., Plaintiff,**

v.

**BOEING–VERTOL COMPANY, a division of the Boeing Company Teledyne Hydra-Power, a division of Teledyne Industries, Inc., Messerschmitt-Boelkow-Blohm GMBH, Defendants.**

Civ. A. No. 78–1956.

United States District Court, E. D. Louisiana.

Jan. 30, 1979.

Vance E. Ellefson, New Orleans, La., for plaintiff.

Harry S. Redmon, Jr., New Orleans, La., Paul B. Goodrich, Seattle, Wash., for defendant Boeing-Vertol Co.

A. R. Christovich, Jr., New Orleans, La., for defendant Teledyne Hydra Power.

Stephen T. Victory, New Orleans, La., for defendant Messerschmitt-Boelkow-Blohm GMBH.

CASSIBRY, District Judge:

This cause came before the court on a motion by defendant Messerschmitt-Boelkow-Blohm (MBB) to stay; and a motion by defendant Boeing-Vertol (Boeing) to enjoin arbitration.

Plaintiff Petroleum Helicopters, Inc. purchased a helicopter manufactured in Germany by MBB and distributed in the United States by Boeing. The helicopter crashed. Plaintiff sued MBB, Boeing, and Teledyne Hydra-Power (a component manufacturer) for property damage to its helicopter. Boeing has cross-claimed against MBB and Teledyne Hydra-Power.

Boeing and MBB entered into two agreements, License Agreement MANX–222 and Purchase Agreement EX–213. Each agreement contained an arbitration provision— section 8.12 of MANX–222 and section 14.8 of EX–213. These provisions fall within the purview of the federal arbitration statute, 9 U.S.C. § 1 *et seq.*, for they are part of contracts evidencing transactions involving commerce. 9 U.S.C. § 2.

■ MBB contends that two matters should be referred to arbitration under these clauses. One is the question of whether Boeing has a duty to defend MBB in the instant proceedings. Any such duty would exist only pursuant to section 8.3 of Purchase Agreement MANX–222. Since disputes arising out of a provision of that Agreement must, under the terms of its section 8.12, be submitted to arbitration, the question of the duty to defend should be arbitrated.

The other matter MBB contends should be arbitrated is the question of whether MBB owes any indemnity or contribution to Boeing. Boeing has raised this issue in its cross-claim. Boeing argues that its claim for indemnity or contribution is outside the scope of the arbitration clauses because it is predicated upon strict liability in tort and not upon any provision of the MANX–222 or EX–213 contracts.

■ Boeing's argument, however, construes the arbitration provisions in MANX–222 and EX–213 too narrowly. *See generally Seaboard Coast Line R.R. Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir. 1977). The clauses here are broadly drafted. MANX–222 section 8.12 provides for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement." EX–213 section 14.8 speaks of arbitration of "all disputes arising in connection with this Agreement." These provisions do not require that the specific legal rights being asserted be created by the Agreements, but rather simply that those legal rights relate to the underlying relationships between the parties estab-

lished by the Agreements. These contracts—a licensing agreement and a purchase agreement—form the basis for the manufacturer-distributor relationship between MBB and Boeing. Boeing's claim for indemnity or contribution is founded upon that relationship, and is accordingly subject to arbitration. The case of *Acevedo Maldonado v. PPG Industries*, 514 F.2d 614 (1st Cir. 1975) supports this conclusion. *See also United Aircraft v. GreenlandAir*, 298 F.Supp. 1329 (D.Conn.1969), *aff'd per curiam* 410 F.2d 761 (3d Cir. 1969).

■ Thus, MBB and Boeing should arbitrate the question of whether MBB owes any indemnity or contribution to Boeing. Accordingly, Boeing's cross-claim must be severed and stayed until the arbitration on that question is complete. The stay of judicial proceedings between MBB and Boeing is authorized by 9 U.S.C. § 3. The stay, however, also encompasses Teledyne Hydra-Power. It would be wasteful to stay a cross-claim as to one defendant to it but not as to the other. The court has authority to so control its docket. *See Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Molino Harrinero Sula, S.A. v. MV MOLINERA*, Civ. No. 75–1318, E.D.La. (unpublished opinion by Chief Judge Heebe, Jan. 21, 1976).

■ Although there should be arbitration on both the question of indemnity or contribution between MBB and Boeing and the question of Boeing's duty to defend MBB, a stay of the entire action here is not appropriate. The plaintiff was not a party to the arbitration agreements. It should be allowed to press forward with its case. *Kaiser v. Messerschmitt-Boelkow-Blohm*, Civ. No. 78–0007, W.D.La. (unpublished opinion by Judge Davis, June 16, 1978), *stay denied*, 5th Cir., No. 78–2937 (Oct. 23, 1978).

At the heart of plaintiff's case, of course, is the question of whether any party owes money to the plaintiff. Unless and until the court decides this issue in the plaintiff's favor, arbitration of the issue of indemnity or contribution between MBB and Boeing is premature.[1] Moreover, in deciding the issue of liability *vel non* to the plaintiff, the court will reach factual conclusions about whether a manufacturing defect existed and what the nature of any defect was. It seems likely that an arbiter would have to decide these issues before reaching a conclusion on Boeing's claim for indemnity or contribution from MBB.[2] Thus, if the arbiter were allowed to proceed while the court is trying the plaintiff's case, there would be a real possibility of inconsistent fact-finding between the arbiter and the court. *See Kaiser, supra*, at p. 3.

Accordingly, arbitration of the question of indemnity or contribution between MBB and Boeing will be stayed pending the decision by this court on whether there is any liability at all to the plaintiff. A stay of arbitration under these circumstances is within the court's power. *Leesona v. Cotwool Manufacturing Corp.*, 315 F.2d 538 (1st Cir. 1963); *Kaiser, supra; Netherlands Curacao Co., N.V. v. Kenton Corp.*, 366 F.Supp. 744 (S.D.N.Y. 1973).

1. MBB has not filed a cross-claim in this action. Thus, no claim by it for indemnity or contribution from Boeing is before the court. The court notes parenthetically, however, that any such claim would probably present a matter for arbitration. The court notes further that this arbitration would probably have to await the court's decision on the plaintiff's basic claim, for the same reason of prematurity that applies to Boeing's claim for indemnity or contribution.

2. Counsel for MBB suggests that the arbiter could decide the question of whether MBB owes indemnity or contribution to Boeing without making any factual findings about the existence or nature of manufacturing defects. The arbiter, however, does not make its decision in a vacuum, or based on a hypothetical set of facts. The indemnity or contribution that Boeing seeks is based on tort principles governing the relation between a manufacturer and a distributor with regard to defective products. Surely the arbiter will inquire into factual questions concerning possible manufacturing defects before apportioning liability between these parties. Counsel for MBB states that MBB will specifically refrain from asking the arbiter to decide factual issues concerning a possible defect. The arbiter might well conclude, however, that he must make such factual findings in order to decide the legal questions presented to him.

Arbitration of the question of Boeing's duty to defend MBB may also require resolution of factual issues that will be before the court in its consideration of the plaintiff's basic claim. In a supplemental memorandum, counsel for Boeing has pointed out language in section 8.3 of MANX–222 of which the court was not aware at the time of the hearing. In section 8.3, Boeing agrees to defend MBB against, *inter alia,*

any and all claims and liabilities . . . arising out of or in any way connected with the operation or use of any HELICOPTER or part therefor manufactured or sold by BOEING under this Agreement (*excluding such part thereof as may be supplied by MB[B]*) (emphasis added).

Boeing argues that arbitration of Boeing's duty to defend MBB under this provision will require the arbiter to resolve factual issues concerning the cause of the crash. I agree that this is a very real possibility. The arbiter may find that in order to determine whether a "part . . . supplied by MBB" is involved in such a way as to eliminate, under the express terms of section 8.3, any duty to defend on the part of Boeing, he must evaluate not simply what is alleged, but also what actually happened. That is, his reading of section 8.3 may incline him to determine what in fact caused the crash. For him to do so would be duplicative of the court's efforts and would create the possibility of conflicting fact-finding. Accordingly, arbitration of the question of Boeing's duty to defend must await the court's decision on the merits of the plaintiff's basic claim.

For the above reasons, IT IS ORDERED:

1. That the cross-claim of Boeing against MBB be severed from this case for purpose of trial.

2. That Boeing and MBB be authorized to participate fully in all discovery proceedings.

3. That judicial and legal action concerning the cross-claim, except discovery as provided in 2. above, be stayed pending further order of the court.

4. That Boeing and MBB not take any steps toward the commencement or prosecution of arbitration on either the question of any indemnity or contribution owed between Boeing and MBB or the question of whether Boeing owes a duty of defense to MBB, until further order of the court.