## The TAI PING INSURANCE CO., LTD., et al.

v.

## The VESSEL M/V WARSCHAU, et al.

### Civ. A. No. 82–3765.

United States District Court, E.D. Louisiana.

Feb. 9, 1983.

Harvey G. Gleason, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for M/V WARSCHAU.

James Hanemann, Jr., Hanemann & Little, New Orleans, La., for Tai Ping & Asia Cement.

George J. Fowler, III, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Canadian Transport Co. Ltd.

## ORDER

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on the motion of defendant Kommanditgesellschaft Alfred C. Toepfer Schiffahrtsgesellschaft, m.b.H. and Lumber Carrier to stay the cross-claim and third-party complaint filed by Canadian Transport Company, Ltd. against mover pending arbitration. Following oral argument, and considering the record in this matter and the applicable law, for the reasons hereinafter set out, defendant's motion to stay pending arbitration is GRANTED, but, by order of this Court, the arbitration itself is stayed pending a final judgment by this Court on plaintiff's claims against mover and Canadian Transport Company, Ltd. (hereinafter referred to as "Canadian Transport").

This suit arises from an unfortunate transportation of coal from Ohio to Taiwan. During the ocean voyage portion of the carriage, the coal caught fire while on board the German Flag Motorship WARSCHAU.

At the time of the subject voyage, the WARSCHAU was owned by Kommanditgesellschaft Alfred C. Toepfer Schiffahrtsgesellschaft m.b.H. and Lumber Carrier (hereinafter referred to as "Toepfer"). The WARSCHAU was time chartered to Canadian Transport, which corporation in turn voyage chartered the WARSCHAU to Asia Cement Corporation (hereinafter referred to as "Asia Cement"). Asia Cement was also the purchaser of the coal and the receiver for the ocean transport portion of the carriage from America.

The main action was brought by Asia Cement in its capacity as both receiver and charterer of the coal, to recover alleged losses for short-delivery of the coal, loss of quality of the coal, and expenses in reloading the cargo at Long Beach, California. Plaintiff has named various defendants, including Toepfer and Canadian Transport.

Canadian Transport has filed a cross-claim and third-party complaint against To-

epfer.[1] Toepfer has herein moved this Court to refer these claims of Canadian Transport to arbitration in London in accordance with the terms of the charter party between them. At such arbitration, Toepfer intends to present its counter-claims against Canadian Transport.

Toepfer bases its motion for a stay pending arbitration on Clause 17 of the time charter party, which reads as follows:

> "That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at London one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men experienced in Shipping.

This time charter party was entered into in London on May 20, 1975, by two business entities named "Alfred C. Toepfer" and "MacMillan Bloedel Limited." Sometime after the signing of the time charter, Alfred C. Toepfer sold the WARSCHAU to the present owner, herein referred to as Toepfer. Addendum 8 to the charter party shows the transfer of ownership of the WARSCHAU from the one Toepfer entity to the other, as agreed to not otherwise affect the charter party by Toepfer and MacMillan Bloedel Limited (hereinafter referred to as "Bloedel"). Sometime after this Bloedel apparently transferred its interest in the charter party to Canadian Transport, a wholly-owned subsidiary of Bloedel.

No document has been offered showing this transfer, but it is clear from other documents that Canadian Transport has continuously represented itself as the charterer in its dealings with Toepfer and with plaintiff. For instance, in the voyage charter between plaintiff and Canadian Transport, the latter holds itself out as "a divi-

sion of Bloedel, owner of the time chartered ... WARSCHAU." Furthermore, movant has filed in the record a sworn, uncontradicted affidavit from the managing director of Toepfer, which states that Bloedel assigned its rights to the charter to Canadian Transport.

■ Plaintiff has argued that the arbitration clause in the time charter cannot be enforced as regards the present parties, for lack of proof that a written arbitration agreement was ever in force between these parties. It is true that an oral agreement to arbitrate is not enforceable under the United States Arbitration Act; however, the absence of a written agreement between the present parties and/or the absence of a written assignment of rights from the charterer to its subsidiary does not mean that there is no written agreement to arbitrate here.

In fact, there is a written agreement to arbitrate, which is applicable to the present parties pursuant to the general contract principles of assignment and/or estoppel. See *Fisser v. International Bank,* 282 F.2d 231 (2nd Cir.1960), wherein the court held that the assignees of written contracts containing arbitration provisions may become parties to such provisions so as to be bound under the Arbitration Act, and that ordinary contract principles determine who is bound in such situations. Two of these principles expressly recognized in *Fisser* are those of assignment and estoppel. 282 F.2d at 238.

■ In this instance, the owner clearly assigned its rights to the charter party to a different business entity. Apparently, the charterer assigned its rights too, as witnessed by its dealings with the plaintiff and the owner. In any case, Canadian Transport is estopped from denying that the charter party and its provisions apply, under the general doctrine of equitable estoppel, *i.e.,* the "justifiable detrimental reliance upon a factual representation or conduct of

---

1. The complaint filed by Asia Cement named as defendant shipowner "Alfred C. Toepfer, Schiffahrtsgellschaft, m.b.H.," which is the improper name of the shipowner. To insure the inclusion of the shipowner in the proceedings, defendant Canadian Transport filed both a cross-claim and third-party complaint against the shipowner, using the full and correct name.

the other." Calamari and Perillo, CONTRACTS, § 19–47, p. 736 (1977).

There being a written agreement of arbitration, then, between Toepfer and Canadian Transport, this Court must apply the clear requirement of the United States Arbitration Act, 9 U.S.C. § 3, that:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

■ The present motion seeks only to stay the cross-claim and third-party complaint by Canadian Transport against Toepfer. A stay of these actions pending arbitration need not affect the rest of the proceedings in this matter. Moreover, the granting of a stay of these actions need not be conditioned on the arbitration proceeding before the trial of the main suit. Rather, under the inherent equitable power of a federal court to control its docket and manage the proceedings before it in the interest of achieving an efficient, full and fair disposition of the issues, the court has the right to stay any arbitration pending a resolution of other claims properly before it. *Petroleum Helicopters, Inc. v. Boeing-Vertol Co.,* 478 F.Supp. 84, 85–86 (E.D.La.1979), *aff'd on basis of opinion below,* 606 F.2d 114 (5th Cir.1979). *Leesona v. Cotwool Manufacturing Corp.,* 315 F.2d 538 (4th Cir.1963); *Kaiser v. Messerschmitt-Boelkow-Blohm,* Civ. No. 78–0007, W.D.La. (unpublished opinion by Judge Davis, June 16, 1978) *stay denied,* 5th Cir., No. 78–2937 (Oct. 23, 1978); *Netherlands Curacao Co., N.V. v. Kenton Corp.,* 366 F.Supp. 744 (S.D.N.Y.1973). *See, generally, Kerotest Mfg. Co. v. C–O–Two Fire Equipt. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936).

■ In this case, justice is best served by proceeding first with the main action, since the resolution of plaintiff's claims will determine whether there is any liability at all to plaintiff, and, if there is any such liability, will undoubtedly reach factual conclusions about the nature of and relative responsibility for any such liability. Specifically, the trial of the main action should resolve many of the contested issues of fact about what precisely happened to the coal and thus who was responsible.

After such factual resolution, arbitration of the claims between Canadian Transport and Toepfer under the time charter would proceed more justly and expeditiously, particularly in that the possibility of inconsistent fact-finding between the arbiter and the court would be prevented.

Therefore,

IT IS ORDERED that all claims between Toepfer and Canadian Transport, including any future cross-claim by Toepfer against Canadian Transport, are severed and stayed pending arbitration; and

IT IS FURTHER ORDERED that any arbitration proceeding by or between these parties is itself stayed pending a final judgment by this Court of plaintiff's claims against the parties.

IT IS FURTHER ORDERED that neither the stay of the claims nor the stay of the arbitration shall affect the rights of all parties to discovery.